UNITED STATES DISTRICT COURT WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

THOMAS P. O'CONNOR, Plaintiff,                          Case No. 2:19-cv-00218

v.                                                      Honorable. Paul L. Maloney

LEE CHATFIELD, et al., Defendants.

## Immediate Motion for Reconsideration in Part order dated October 31, 2019

It is humbly requested that the opinion and justification of the Partial Dismissal by the Honorable Paul L. Maloney was made with inconsistencies in the interpretation of laws guarding Absolute Immunity. I will outline both through 28 U.S.C. § 1915(e)(2)(B)1-3 and the Supreme Court who ruled a judge is not immune from liability for non judicial actions and a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. Although presenting Pro Se, and compared to the intellect of each defendant through my short dissertation reviewing the above justification against immunity, I ask for your patience in my form but not my logic.

Having reached out to every possible government agency pointing out the clear illegal usurpation of our highest right; to own property. Property, payed in full without mortgage, while holding the government receipt of payed taxes (E18). Each defendant, acted in a manner by taking without do process life savings and applying the profits, outside their jurisdiction, circumventing the laws of millage's to gain though the distribution of those profits padding their offices budgets while simultaneously allowing for a higher tax evaluation of the properties once taken and improved upon.

Never in my life would I have predicted that the highest members, our judicial guardians, would continue to act outside their jurisdiction by continuing to allowing through the 2019 Tax auctions and continued distribution of the profits ignoring Timbs v. Indiana, 586 U.S.(2019), In February 2019, were the highest court in the land unanimously ruled that the Eighth Amendment's prohibition of excessive fines is an incorporated protection applicable to the states under the Fourteenth Amendment.

In closing, the reason for the delay in response comes from the Bar's review of Lucas Middleton, (P79493) and Exhibits 8 & 9, which finally arrived January 26th 2020 show clear perjury when reviewing the affidavits of Carmen Fazzari (Ex 8) and Marjorie Hank (Ex 9). In both, as presented in the appeal Case No: 17-14728-CH, in front of defendant Hon. James P. Lambros; Carmen Fazzari (Ex 8) perjured herself in lines (6) "Furthermore, I explicitly informed Mr. O'Connor that if these taxes were not paid by March 31, 2018, he would lose his property". This is in direct opposition to the affidavit of Suzanne Abbott who was on the phone when and unknown employee first said, there was no chance of foreclosure, then after being questioned of the validity of the response, checked with a supervisor and informed the Plaintiff it was in the first year of the foreclosure cycle, and if we did not mind our names listed in the paper simple pay in April as instructed, This seams impossible since the affidavit is from the new treasurer who would have had clear experiences and knowledge of the foreclosure calendar. (12) "It is our standard office policy to make a notation in our tax records to evidence changes of address request. This is disproved since tax records as supplied were being simultaneous sent to 66 Peninsula for the non critical notices such as the assessments and the hostile 8909 Gittens address for the foreclosure notices. (13) " In accordance with this Policy, I made such a notation for both of the Subject Parcels outlining my conversations with Mr. O'Connor." Once again this is disproved. Reviewing their provided Attachment A & B the dates noted jump from 2012 to 2018. This does not match the phone records. In specific the 2017 01/12 10:31am 906-635-6308 SLTSTMARIE,MI AU 10:00 Chippewa County Treasurer were the Plaintiff once again had to verify the correct address and the amount owed followed the next morning by the receipt of payment which took it out of the forclosure, auction and verified the orginal instructions from the treasurer's office. Finally, (14) "The relevant notations for the Subject Parcels are attached here as Attachments A and B." Clear manipulation of the the record when comparing it to the phone records below, and further allowing "Kerry Davidson" who is the hostile party and who was never on the record of ownership to communicate on 3-21-18, even after the treasurer was informed on January, 29th 2018 that she illegally changed the address of notification that was PREVIOUSLY corrected in the 2017 01/12/12 phone call and taxes were payed.

Through the following, justification due to materials required by a system so broke that a citizen is forced into bankruptcy to prove their innocence to keep his legally owned land, and because of the quantity of paperwork required, I intend to finally make available all the supported evidence to move forward now that the plaintiff was granted the

ability to 'e-file' by the Honorable Maarten Vermaat under Civil Rule 5.7 on November 7, 2019. In the following dissection of the *Motion, Opinion and Order* dated: October 31, 2019, Support for Partial Dismissal of the Plaintiffs listed will be rebutted based on case study and color of the law. Because of the inexperience of this ProSe Plaintiff, and inability to find a previous example to follow, I dissected the Opinion with with a red highlighted

**Rebut** Followed by support, clarification and/or justification bolded.

*Plaintiff Thomas P. O'Connor, acting pro se, filed this 42 U.S.C. § 1983 lawsuit against Defendants State of Michigan Representative Lee Chatfield, Chippewa County, Chippewa County Treasurer Marjorie Hank, Chippewa County Prosecuting Attorney Robert L. Stratton, Luce County Public Administrator James W. Robinson, Title-Check, LLC Attorney Lucas Middleton, Title-Check, LCC principle Marty Spaulding, Judge James P. Lambros, Chief Justice of the Michigan Supreme Court Bridget Mary McCormack, Michigan Supreme Court Justice Stephen J. Markman, Michigan Supreme Court Justice Brian K. Zahra, Michigan Supreme Court Justice David F. Vivian, Michigan Supreme Court Justice Richard Bernstein, Michigan Supreme Court Justice Elizabeth T. Clement, Michigan Supreme Court Justice Megan K. Cavanagh, and unknown staff members who work for Chippewa County Treasurer Marjorie Hank. Plaintiff's motion for leave to proceed in forma pauperis was granted on October 28, 2019.  (ECF No. 5.)*

*Plaintiff alleges that this matter was previously litigated in the state courts of Michigan. Plaintiff states that his injuries were "caused by the previous courts, collusion, fraud, and errors in interpretation leading to indentured servitude, denial of life, and rights to liberty." (ECF No. 1, Page ID.6.) Plaintiff asks "[t]o immediately stay the unlawful Tax Auction set to occur by November 1, 2019 until all rights of the Plaintiff can be heard by this court or until exhausted by the nation's Supreme Court." (Id.)*

*Plaintiff claims that Defendants are involved in a scheme to defraud property owners of their property for their own personal benefit and/or the benefit of municipalities in the State of Michigan. Plaintiff alleges that because the State of Michigan authorizes counties to take the full value of the property regardless of the tax liability owed, the State created financial incentives for Defendants to foreclose and sell valuable properties rather than to help property owners avoid foreclosure. (ECF No. 1, PageID.8.)*

*Plaintiff owns property that consists of several lots in Chippewa County Michigan.*
**Rebut** (**Lots 47 to 51 were conjoining lots without mortgage that the county refused to tax as such**)

*Plaintiff failed to pay the taxes on some of his lots and the County of Chippewa began foreclosure proceedings to recover the unpaid taxes on two of the lots.*
**Rebut** (**The receipt E18 provided to the courts demonstrated the plaintiffs taxes had in fact been paid.**)

*Plaintiff asserts that his failure to pay taxes was an oversight due to a simple error.*
**Rebut. The receipt that was provided to the courts E18 demonstrated the plaintiffs taxes had in fact been paid and due to the false instructions of the county; the property was just entering into the 1'st year of the next 3 year foreclosure cycle, and as witnessed, plaintiff was told there was no chance of foreclosure, "simply pay the total amount in April which was provided". Not a simple oversight but a calculated plan to gain from the profits and new tax assessment that would occur with the predatory auction.**

*Plaintiff states that the fraudulent activities of each Defendant in furtherance of a conspiracy caused him to be misinformed about the foreclosure redemption period and violated his rights under the United States Constitution, federal laws, and common law.(ECF No. 8, PageID.7.)*

**Rebut. The plaintiff's evidence is indisputable, through provided phone records (E8), by his due diligence after notification of the counties illegal change of address without permission, the correction of the address was performed at 9:33 am on January 29th in a 9 minute call to the treasure's office. Even though the hostile change of address was corrected and the homeowner was guaranteed, as witnessed by Suzanne Abbott, not to be in jeopardy of loosing his property and assured that the foreclosure was in the first stage, and not the final stage. Further, contacting each of the the defendants, fraud was conducted with the treasury subordinate by**

denying the lots 49 & 50 were in foreclosure at all when they treated the property as in the absolute final stage as witnessed in the Affidavit of Suzanne Abbott (E8) Reaching out as demonstrated through the following partial emails, no government employees, news organizations, Lawyers, Judges, Educators would help this clear usurpation.

*From:* tom@2alphaomega.com *Date:* 6/28/2019 4:33:48 PM
*To:* EngelmanM@michigan.gov
*Subject:* Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim. Please Help.
*From:* tom@2alphaomega.com *Date:* 6/20/2019 10:28:54 PM
*To:* schram@umich.edu; Michigan.radio@umich.edu; vduffy@umich.edu; feedback@environmentreport.org;
fox2newsdesk@foxtv.com; reportit@woodtv.com; metro@detroitnews.com; newstips@detroitnews.com;
paprange@CBS.com; web@wwjtv.com; news@wdiv.com; news@wsmh.com; wnem@wnem.com;
news@fox17online.com; newstips@fox47news.com; newsroom@upnorthlive.com
*Subject:* Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim. Please Help.
*From:* tom@2alphaomega.com *Date:* 6/20/2019 2:53:36 PM
*To:* Michael Lebow
*Cc:* **LeeChatfield@house.mi.gov** ;  MoodyL@Michigan.gov; HammoudF@Michigan.gov; KnezekD@Michigan.gov;
RobinsonR@Michigan.gov; ManningP@Michigan.gov; ArbuluA@Michigan.gov; EngelmanM@Michigan.gov;
LevyD@Michigan.gov; ClarkL@Michigan.gov; KeatleyA@Michigan.gov; EpkeyA@Michigan.gov;
CliftJ@Michigan.gov; Wheeler.Andrew@Epa.gov; Darwin.henry@Epa.gov; letters@newsweek.com; letters@time.com;
support@apnews.com; hwalker@krtinfo.com; Cindy.Gonzalez@nytimes.com; Innovation@ThomasReuters.com;
comments@foxnews.com; thecall@cnbc.com; closingbell@cnbc.com; squawk@cnbc.com; madmoney@cnbc.com;
letters@detnews.com; edito@usatoday.com; ChristineGreig@house.MI.gov; JasonWentworth@house.MI.gov;
YousefRabhi@house.MI.gov; TristonCole@house.MI.gov; EubanksR@Michigan.gov; GuilfoyleJ@Michigan.gov;
DurfeeS@Michigan.gov; GoodA@Michigan.gov;      BraeutigamJ@Michigan.gov; WohlfertA@Michigan.gov;
    WhiteG@Michigan.gov; MarmonD@Michigan.gov; mla085@Hotmail.com; AboodM@Michigan.gov;
hrh78@yahoo.com; EnyartV@Michigan.gov; PreetiG@Michigan.gov; BiedaS@Michigan.gov; DebienK@Michigan.gov;
EschelbachM@Michigan.gov; McDowellG@Michigan.gov; McFarlaneK@Michigan.gov; AverillJ@Michigan.gov;
DeaconB@Michigan.gov;
AnastorP@Michigan.gov; JohnsonJ@Michigan.gov; NesselD@Michigan.gov; KeenanK@Michigan.gov;


**Subject:Fw:80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim. Please Help.**

**The darkest places in hell are reserved for those who maintain their neutrality in times of moral crisis. Dante I have sent this request for help to about 20 people. Scholars, lawyers, reporters, politicians all are smarter than me. Included were all who should care about the Predatory Foreclosures occurring in Michigan. Could one person on the list please call me and after reading the attached and explain why this is not Usurpation? Thank you in advance.**

**"life, liberty, and the pursuit of happiness""But when along train of abuses and usurpations, pursuing in variably the same object, evinces a design to reduce the munder absolute despotism, it is their right, it is their duty to throw off such government and provide new guards for their future security. "Usurpation means taking some one's power or property by force. I am sending this in desperation that this letter will reach one person in this government of authority or a citizen with the legal integrity and intellectual capacity to understand the blatant abuse, predatory foreclosure and act of usurpation that has been forced upon my family. To help me remove the illicit guards that have caused irrefutable damage through their fraudulent and malicious acts. Never in a million years would I have believed after working my entire life; completely paying off my homestead and preparing for retirement, that it could it be ripped from me with out do cause, governmental fraud and in a predatory manner. The homestead was a realization of a negative carbon foot print residence (TheErgProject) as the USA entry at the International Science and Engineering competition.**

Then two years later after the earth capacitor was completed, and two years of 100% chemical free elimination of all non-indigenous invasive bio-mass, they dragged me into a 4 year legal battle to fight a $4.2 Million fine. The County appraiser after orally giving me her blessing and instructed me to fill out an affidavit contesting to the agricultural 51% requirement, denied it making the purchase of the Contiguous lots surrounding 49 & 50 (47, 48, 51) useless if you cannot be taxed under the agricultural amount. The part 91 and building Inspector acted honorable and in the utmost level you would hope from our government. 10 years lost

Finally, and for the most time crucial. Once everything was purchased in full and all titles in my name, The county treasure's office allowed someone by phone to change the tax notification addresses without my permission. But only on the key center contiguous lots that had the majority of building preparation completed and highest value.  This  was  after  I personally discussed the addressing since I missed a couple other notifications and instructed the treasures office to flag the account. Then when I called in January, because I received notifications only for 47,48, and 51 we were first told that 49 and 50 were not in foreclosure and they would correct the address. Then after we question the accuracy since we had not received any tax notifications for 49 and 50 and heard rumors, the subordinate corrected herself and told us we were just at the beginning of the process and we had no chance of being foreclosed as long as we paid the Taxes in "April 8th", which we paid in full including all penalties by computer. In a predatory fashion even though I had paid precisely as instructed do to the fraudulent change of the address and never received any one of the required notifications and abilities to call for relief, we were now being told the property WAS no longer mine and they refused to take the full payment. 5 years lost.

Attached is an overview pointing out this Predatory act that apparently has become the norm in Michigan and some of the government employees responsible. In addition I included for review a partial bio of myself and the appeal filed. Please feel free to call me at any time if you feel you can help.
Sincerely, Thomas O'Connor. 248-974-8002

 Sample of Notes Sent out for help.

The others were the previous legal cases and bio all of which will be made available through attached files

| Tax Unit | Tax Unit Name | | Tax Year |
|---|---|---|---|
| 001-483-047 to 051 - 00 | 001 | BAY MILLS | 2019 |

My name is Thomas O'Connor and I am writing to you in desperation in hopes that someone will stop the Predatory foreclosure by the Chippewa County on the center two lots 49 & 50 of my only home, and research site.

28085 W MAPLE LN, ECKERMAN MI 49728, OWNER OCONNOR THOMAS
66 PENINSULA DRIVE.LEONARD MI 48367

I have outlined below the time frame and a brief overview. In 2017 due to fraudulent actions taken against me when the tax addresses were allowed by the treasures office to be changed without my permission.

Through multiple phone conversations the addresses were corrected and I was told that as long as I paid in April; "the foreclosure Procedures were just starting and I would be just fine".

I was foreclosed on my property even though I paid as instructed. A predatory act. The properties were all fully payed off, owned by me, my only home and retirement homestead. In short even though I was following the directions of the Treasure's and payed in full within the time frame instructed, April; with out do process, awarded me by the state and knowingly changing my address without my permission; the county foreclosed on my property.

Further, after going to court to reverse the process, and paying for a lawyer:

Charles Palmer
545 Ashmun
Suite 9
Sault Ste. Marie, MI 49873
(906) 632-1155

The treasurer and staff were not brought up to testify, I was told it was outside the jurisdiction by the judge therefore unable to make a ruling on the case and here was simply nothing I could do. I immediately contacted another lawyer who was helping to keep Kerry O'Connor Davidson from continuing changing the addresses and appeal:

Michael J Lebow nbta
Board Certified Civil Trial Specialist*
838 West Long Lake Road, Suite 100
Bloomfield Hills Michigan 48302
248.419.1994 main
248.209.6529 direct

See attached Appeal Case list lots 49 & 50

The judicial system has nearly bankrupt me. 2018 Jan 28th: Received a phone call from Nancy Pascuzzi's informing me that Kerry O'Connor Davidson stated "Tommy (Tom O'Connor Jr.) is being foreclosed Feb 14th. And they were auctioning all his property on McNEARNEY lake on his birthday May 13." These 5 contiguous lots 47,48,49,50,51 took me 40 years to purchase, completely paid off, and was my retirement homestead. I thought it was a joke. I phoned Treasury office Monday the next day after learning of the text message, Chippewa County treasurer's office denied the properties were in foreclosure, then after asking a subordinate to double check and waiting on hold she returned stating, I had until April to pay 2015 taxes before proceedings would start, and that if I didn't mind my name being in the paper I had no risk of loosing the properties as long as I paid in April. This was not the treasurer, a subordinate having spoken a dozen time with Marjorie the treasure I recognized the voice.

The treasury office:
Marjorie Hank 319 Court Street
Sault Ste. Marie, 49783
Phone: 906-635-6308
mhank@chippewacountymi.gov

Marjorie Hank was well aware I had the 66 Peninsula Leonard Michigan 48367 on file sending me other tax notifications. In addition I had contacted the treasurer's office numerous time warning of my sister's psychiatric issues (Medical Diagnosis on file) and reiterating the fact the the title had been in my name for years and the correct address was at 66 Peninsula Leonard Michigan 48367. At No Time during these conversations was I informed that foreclosure proceedings were taken place. What is worse was I was denied the legal steps of foreclosure even though the treasure's office was aware of the possibility that someone could try to change my address and did not notify me of the actions.

I was made aware during that conversation that Kerry O'Connor Davidson had phoned the treasures office and changed my address to 8909 Gittins (Thomas O'Connor Sr.'s address) which Kerry Davidson resides without my knowledge or permission. After reinstating my correct address (66 Peninsula) again, I informed them at that time, the details with the current law suit (Tom O'Connor Sr) regarding the properties. Further, I requested a notification be placed on my account to not allow address changes to be made other than by myself. I was told in response that any one is able to call and place a change of address at any time and they cannot do anything keeping this from occurring.

Even though we were told the lots 49 & 50 were not in foreclosure, the Treasurers office knew they were, in a predatory manner the Treasurers office still did not give me the notifications of recovery meetings and a chance to Pay all acquired taxes and penalties as outlined in the states Forfeiture foreclosure time line.

Since then I have not received a single notification from Corey at the "Title Check" about any of the foreclosure procedures to follow. It should be noted: to date only lots 47, 50 and 51 have had a tax bill and 2 assessment notes sent to the corrected 66 Peninsula Dr, Leonard Mi 48367 address. I have maintained contact with the Treasury's office over the years in which I continue to explain the reason why I only pay taxes with in the legal time frame required to avoid foreclosure. I did so because I have been in the process of finding counsel to help show cause and correct the error of agricultural compliance. I feel I meet all qualifications to the "agricultural compliance statute", and I signed a sworn affidavit contesting this. Unfortunately, the proper and fair tax burden including in the benefits of the agricultural compliance has not been corrected. Before I purchased the properties, I explained the purpose to the Assessor, DEQ, Chippewa Building Inspector, Part 91 Director during a site visit. The tax assessor:

Luanne Kooiman, Assessor
PO Box 5001
Kincheloe, MI 49788
(906) 495-5756
Email: lkooiman2020@gmail.com

The Assessor has shown nothing but contempt towards my claim of ag/comp. and this social and educational project.

14. I have not received any of the required and associated notices with respect to the foreclosure Timeline and procedures even after the treasurer's office had re-corrected the address.
15. Having my entire retirement homestead completely paid for in full, ~ $355,000, in addition to excavation cost incurred $45,000 to clear 7 acres.
16. Why should I have been kept from feeding myself on my own property and to defend myself for 2 years in a $4.2 million DEQ case related to building restrictions in which the director of the part 91 erosion control:

Chippewa-East Mackinac Conservation District-CEA
2847 Ashmun Street Sault Sainte Marie, Michigan 49783
906-635-1278 | Fax 906-632-0341 www.clmcd.org/

wrote a letter to the court that clearly stated, I was standing right there when the DEQ representative told Mr O'Connor he did not need any permits for the work-in-process. I did get the appropriate Part 91 permits.
17. How can a tax assessor with respect to the agricultural compliance issue which I signed an affidavit and filled out all the proper paperwork for simple tell me know and cost me more money trying to reverse it than the savings meant to aid in the vegetation for the farm.
18. This is criminal! They knew where I resided, Peninsula, they knew the paperwork was being sent to Gittins. They had my current phone number on file and we spoke multiple times to the treasure and when asked directly if my only home was being foreclosed we were told NO.
19. They have sent to the Peninsula address the assessors report for the lots 49&50. So the know the address, yet the other reports were never sent.
20. Why would I knowingly jeopardize this. This is my was my home and retirement. It was completely paid off with no mortgage. Most importantly, why would I let the two center lots of a contiguous homestead be foreclosed making the value of the lots 47, 48 and 51 drop.
21. Not only did I offer the complete amount including penalties and interest etc., there could have been numerous means to get the money owed if it became necessary.
22. I paid precisely as instructed as outlined above and witnessed.
23. I continue to pay all taxes for the surrounding properties and the electrical bill maintaining the foreclosed lots 49 & 50.
24. Just as outlined in the supreme court case, Chippewa Township knew the value of this prime lakefront property, They new my contact information, they had no right to change my notification addresses and like so many other counties used their ability to foreclose without proper notification to obtain a possible $200,000.00 Windfall in a Predatory fashion. All this shows cause of predatory foreclosure.
The following is justification for relief.

Rule 2.612 Relief From Judgment or Order
(A) Clerical Mistakes.
(1) Clerical mistakes in judgments, orders, or other parts of the record and errors a rising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it. Ignorance of the owners correct Address, and treasure's staff instructed to pay in April instead of March 31.

(2) If a claim of appeal is filed or an appellate court grants leave to appeal, the trial court may correct errors as provided in MCR 7.208(A) and (C).

Rule 7.208 Authority of Court or Tribunal Appealed From
(A) Limitations. After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except:
(1) by order of the Court of Appeals,
(2) by stipulation of the parties,
(3) after a decision on the merits in an action in which a preliminary injunction was granted, or
(4) as otherwise provided by law. In a criminal case, the filing of the claim of appeal does not preclude the trial court from granting a timely motion under subrule (B)

C) Correction of Defects. Except as otherwise provided by rule and until the record is filed in the Court of Appeals, the trial court or tribunal has jurisdiction
(1) to grant further time to do, properly perform, or correct any act in the trial court or tribunal in connection with the appeal that was omitted or insufficiently done, other than to extend the time for filing a claim of appeal or for paying the entry fee or to allow delayed appeal;
(2) to correct any part of the record to be transmitted to the Court of Appeals, but only after notice to the parties and an opportunity for a hearing on the proposed correction.

After the record is filed in the Court of Appeals, the trial court may correct the record only with leave of the Court of Appeals.

Rule 7.203 Jurisdiction of the Court of Appeals

(C) Extraordinary Writs, Original Actions, and Enforcement Actions. The court may entertain an action for:
(1) superintending control over a lower court or a tribunal immediately below it arising out of an action or proceeding which, when concluded, would result in an order appealable to the Court of Appeals;
(2) mandamus against a state officer (see MCL 600.4401);
(4) quo warranto involving a state office or officer;
(5) any original action required by law to be filed in the Court of Appeals or Supreme Court;
(6) any action to enforce a final order of an administrative tribunal or agency required by law to be filed in the Court of Appeals or Supreme Court.

(B) Defendant Not Personally Notified.
A defendant over whom personal jurisdiction was necessary and acquired, but who did not in fact have knowledge of the pendency of the action, may enter an appearance within 1 year after final judgment, and if the defendant shows reason justifying relief from the judgment and innocent third persons will not be prejudiced, the court may relieve the defendant from the judgment, order, or proceedings for which personal jurisdiction was necessary, on payment of costs or on conditions the court deems just.

The ownership and address on record of lots 47-51 were known by the treasure's office, once the Chippewa County treasurer's office allowed for a change of address from 66 Peninsula Dr, Leonard MI 48367 to 8909 Gittens Commerce Twp. MI 48085 by a third party flagged fraudulently took a predatory state against the home owner. Knowing this the Chippewa County treasurer's office action allowed to have lots 49 & 50 changed via phone by third party in order to disable the owner Thomas O'Connor from receiving tax notifications. Thus in a predatory manner causing the foreclosure of said properties.

(C) Grounds for Relief From Judgment.

1.    On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect:

Mistake 1- Chippewa County treasurer's office allowed for a change of address from 66 Peninsula Dr, Leonard MI 48367 to 8909 Gittens Commerce Twp. MI 48085. To have your address or name changed on a Tax Record, you must visit your local assessor's office within the municipality of where the home is located and show proof of sale, deed or property transfer.

Mistake 2 – Treasure informed numerous times as witnessed by Suzanne Abbott that "any one is able to call and place a change of address at any time and they cannot do anything keeping this from occurring".

Mistake 3- Chippewa County treasurer's office denied the properties Lots 49, 50 were in foreclosure. Home owner Thomas O'Connor and witness Suzanne Abbott question the accuracy of the subordinate and asked the subordinate to check with a supervisor.

Mistake 4- Chippewa County treasurer's office instructed the properties Lots 49, 50 were in the first stage of foreclosure. Home owner Thomas O'Connor and witness Suzanne Abbott were made to understand that the properties were in the initial stage, properties were in fact in the final stage of foreclosure.

Inadvertence 1- Chippewa County treasurer's subordinate instructed the properties
Lots 49, 50 had no chance of being foreclosed on as long as payment in full was sent received by the office in April.

◦ Due to the Mistake 4, the due date of payment should have been March 31.

Excusable neglect 1- Chippewa County treasurer's subordinate instructed the Home owner Thomas O'Connor and witness Suzanne Abbott,

◦"As long as we didn't mind having our name in the newspaper and we payed in full in April, there was no threat that the Lots 49, 50 would be foreclosed on."

Excusable neglect 2- Chippewa County treasurer's subordinate instructed the Home
owner Thomas O'Connor and witness Suzanne Abbott, The change in address
had been corrected and once again Flagged.

◦ Properties lots 49, 50 as informed by Corey , Title Check department, then Marjorie on Wed.
As witnessed by Mike LeBow esq. the corrected address made back in January had not occurred
and confirmed there were no mailings sent to 66 Peninsula. and "we did not have anything to worry about."

Surprise 1- After providing the Chippewa County treasurer and subordinate the 66
Peninsula Address, the treasury's office having current address phone number, informing
the office of the current situation pertaining to the hostile changing of the address,
having 5 contiguous lots and having being told that, "we were at the very beginning
of the foreclosure process". We were surprised the Chippewa County treasurer's office fraudulently chose not to
take reasonable standards of notification knowing there was a disparity in the mailing addresses and
notifications for lots 47-51.

◦ 211.78b Notice provisions; June 1. Chippewa County treasurer failed to deliver
◦211.78c Notice provisions; September 1.Chippewa County treasurer failed to deliver
◦211.78e List of property subject to forfeiture for delinquent taxes; determination

(2) Not later than December 1 in each tax year, the county treasurer shall deter mine, to the extent possible,
all of the following based exclusively on the records contained in the office of the local assessor, local
treasurer, and county treasurer for property subject to forfeiture for delinquent taxes under section 78g on
the immediately succeeding March 1:
• (a) The street address of the property.
• (b) The name and address of all of the following:
◦ (i) The owners.
◦ (ii) The holder of any undischarged mortgage, tax certificate issued under section 71, or other legal interest
◦ (iii) A subsequent purchaser under any land contract.
◦ (iv) A person entitled to notice of the return of delinquent taxes under section 78a(5)
Chippewa County treasurer's office having the congruent lots 47-51 on file, failed to determine,
to the extent possible.

◦ 211.78g Property delinquent for preceding 12 months or forfeited for total amount; right to possession by
foreclosing governmental unit; limitation;
recording certificate with county register of deeds; redemption; property as
site of environmental contamination; reduction in amount necessary to redeem property.

(3) Property forfeited to the county treasurer under subsection (1) may be redeemed at any time on or before the
March 31 immediately succeeding the
entry of a judgment foreclosing the property under section 78k or in a contested
case within 21 days of the entry of a judgment foreclosing the property under section 78k upon payment to the
county treasurer of all of the following:

(a)  The total amount of unpaid delinquent taxes, interest, penalties, and fees for which the property was forfeited
or the reduced amount of unpaid delinquent taxes, interest, penalties, and fees payable under subsection (8), if
applicable. Chippewa County treasurer's office not excepting the redemption payment in full
as instructed; because of errors from their staff caused the homeowner to not be able to use other governmental
forms of relief. Thus acting in a predatory manner in an attempt to foreclosure and collect the windfall
as being challenged in 80 out of 83 counties and the supreme court.

◦211.78h Petition for foreclosure; filing in circuit court; removal of propertyfrom petition; withholding property
by foreclosing governmental unit hearing date.

(4) The foreclosing governmental unit may withhold the following property from the petition for foreclosure
filed under this section:

(b) Property the title to which is held by a person undergoing substantial financial hardship, as determined
under a written policy developed and adopted by the foreclosing governmental unit. The foreclosing governmental
unit shall make available to the public the written policy adopted under this subdivision.
The written policy adopted under this subdivision shall include, but is not limited to, all of the following:
◦ Chippewa County treasurer's office ignoring the hostile changing of the addresses from peninsula
to Gittins by a third actor, caused the homeowner to not be able to use other governmental
forms of relief. Thus acting in a Predatory manner in an attempt to foreclosure and collect the
windfall as being challenged in 80 out of 83 counties and the supreme court.
(i) The person requesting that the property be withheld from the petition for fore
closure holds the title to the property. This is established by the home owner.

◦ Chippewa County treasurer's office knowing the contiguous lots 47-51 were titled to the homeowner Thomas O'Connor did not give the opportunity to withhold the petition thus acting in a predatory manner in an attempt to foreclosure and collect the windfall as being challenged In 80 out of 83 counties and the supreme court.

◦ 211.78i Identification of owners of property interest; title search; personal visit to determine occupancy; publication of notice; sources of identification; notice provisions; prohibited assertions if failure to redeem property; noncompliance; "authorized representative" defined; applicability of other requirements.

38. Appropriate Address Section 78i (2) requires foreclosing governmental units, or their authorized representative, to determine that address reasonably calculated to apprise owners of an interest in tax- delinquent property concerning the pendency of the administrative show cause hearing and the Judicial foreclosure hearing.

▪ (2) After conducting the search of records under subsection (1), the foreclosing governmental unit or its authorized representative shall determine the address reasonably calculated to apprise those owners of a property interest of the show cause hearing under section 78j and the foreclosure hearing under section 78k and shall send notice of the show cause hearing under section 78j and the foreclosure hearing under section 78k to those owners, and to a person entitled to notice of the return of delinquent taxes under section 78a(4), by certified mail, return receipt requested, not less than 30 days before the show cause hearing.

◦ The Chippewa County Treasure knowing the contiguous properties 47-51 where all on file as owned solely by Thomas O'Connor, failed to determine that address reasonably calculated to apprise owners of an interest in tax-delinquent property concerning the pendency of the administrative show cause hearing and the judicial foreclosure hearing.

◦ If after conducting the search of records under subsection (1) the foreclosing governmental unit is unable to determine an address reasonably calculated to inform a person with an interest in a forfeited property, or if the foreclosing governmental unit discovers a deficiency in notice under subsection (4), the following shall be considered reasonable steps by the foreclosing governmental unit or its authorized representative to ascertain the address of a person entitled to notice under the is section or to ascertain an address necessary to correct the deficiency in notice under subsection (4):

◦ The Chippewa County Treasure, knowing the contiguous properties 47-51 where all on file as owned solely by Thomas O'Connor, failed to determine that the address reasonably, the following was not considered thus reasonable steps by the foreclosing governmental unit The Chippewa County Treasure failed to ascertain the address of a person entitled to notice under this section or to ascertain an address necessary to correct the deficiency in notice under subsection (4): calculated to apprise owners of an interest in tax-delinquent property concerning the pendency of the administrative show cause hearing and the judicial foreclosure hearing.

▪ Section 78i (3) requires foreclosing governmental units, The Chippewa County Treasure, to conduct a personal visit to each parcel of forfeited property. If a parcel of property appears to be occupied, a foreclosing governmental unit is required to do all of the following:
• (a) Personally serve notice upon the person occupying the property.

◦ The Chippewa County Treasure failed to serve owner. (b) If personal service occurs, orally inform the person that the property will be foreclosed and the occupant will be required to vacate unless the taxes, interest, penalties, and fees are paid.

◦ The Chippewa County Treasure being notified of the illegal address change for the lots 49 & 50 orally informed Tom O'Connor and witness Suzanne Abbott that the property was not going to be foreclosed as long as the taxes, interest, penalties, and fees are paid in April.

•(d) Post a notice on the property if it is not possible to personally meet with the occupant.

◦ The Chippewa County Treasure knowing the contiguous properties 47-51 where all on file as owned solely by Thomas O'Connor, made It more than possible to personally meet.

◦211.78j Schedule of show cause hearing by foreclosing governmental unit.
▪ The owner and any person with a property interest in the property forfeited to the county treasurer may appear at the hearing held pursuant to this section and redeem that property or show cause why absolute title to that property should not vest in the foreclosing governmental unit for any of the reasons set forth in section 78k(2).

▪ (2) A person claiming an interest in a parcel of property set forth in the petition for foreclosure may contest the validity or correctness of the forfeited unpaid delinquent taxes, interest, penalties, and fees for 1 or more of the following reasons:

• (d) The tax has been paid within the time limited by law for payment or redemption.
◦ Being instructed to Pay in full during the month of April, the on line
payment on April 8, 20197 the time limit was met and redemption.
• (e) The tax was assessed fraudulently.
◦ By the Chippewa County Treasure knowing and refusing to send all required documents to the Peninsula
address, through a predatory action fraudulently gained possession of lots 49 & 50

◦ 211.78f Notice provisions; unpaid delinquent taxes; additional notices;
circulation; insert.

◦ 211.78l Owner of extinguished recorded or unrecorded property interest; claim of failure to
receive notice; action to recover monetary damages; right to sue not transferable.

•Surprise 2- By not conducting the required due diligence, Chippewa County treasurer and subordinates
chose to ignore the 5 contiguous lots, allowing 49 & 50 tax address illegally changed by a non approved
third party without verification and notification.
• Surprise 3- Not accepting the immediate payment in whole precisely when contracted to, once the
errors were found and reviewed.

◦ Ready to pay in January if instructed; Chippewa County treasurer conducted a predatory foreclosure since
they had the right to voluntarily accept the payment based on internal Mistakes, inadvertence, excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move
for a new trial under MCR 2.611(B).
• Knowing the contiguous lots surrounding 49 & 50, were all owned in whole without mortgage by Thomas
O'Connor, Chippewa County treasurer's office intentionally ignored the required due diligence of notifying the
home owner of the eminent foreclosure of properties Lots 49, 50 in a fraudulent manner; in order obtain the
properties in a predatory manner choose not to contact the owner at his known address and phone number.

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
•Extrinsic Fraud – The Chippewa County treasurer's office intentionally ignored the required due
diligence of notifying the home owner of the eminent foreclosure of properties Lots 49, 50 depriving
the opportunity to be heard.
• Intrinsic Fraud - in the factum by the Chippewa County treasurer's subordinate instructed the Home
owner Thomas O'Connor and witness Suzanne Abbott, by contracting the payment in April when the last
day of payment was March 31.
•Intrinsic Fraud - Fraud in the inducement occurred when The Chippewa County treasurer's office
knowingly agreed to follow the rules 206-1893 REDEMPTION AND ANNULMENT in particular Section

211.74-211.77 while knowing they were not sending the notifications to the known 66 Peninsula address.
• Intrinsic Fraud - Fraud in the inducement occurred when The Chippewa County treasurer's office
knowingly agreed to accept full and payment in April instead of the known March 31 deadline.
(d) The judgment is void.
(e) The judgment has been satisfied, released, or discharged; a prior judgment on
which it is based has been reversed or otherwise vacated; or it is no longer
equitable that the judgment should have prospective application.
(f) Any other reason justifying relief from the operation of the judgment.

(2) The motion must be made within a reasonable time, and, for the grounds stated in sub rules (C)(1)(a), (b), and
(c),within one year after the judgment, order, or proceeding was entered or taken. Except as provided
in MCR 2.614(A)(1), a motion under this subrule does not affect the finality of a judgment or suspend its operation
This subrule does not limit the power of a court to entertain an independent action to relieve a party from a
judgment, order, or proceeding; to grant relief to a defendant not actually personally
notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

• In a clear predatory series of actions, The Chippewa County treasurer's office knowingly and fraudulently
deceived the true nature of the foreclosure, agreed to accept full and complete payment in April instead
of the known March 31 deadline, refused the payment, and attempted to gain in the acquisition of the value of lots
49 & 50 .

From the first on site meetings prior to purchasing the properties 47-51 and explaining the Erg algorithm, the
DEQ and Chippewa treasure's office have continued to block and keep me from proceeding with the Erg project.

I feel the following is why this predatory action has occurred:
1. Because of the agricultural compliance, tax losses to the local treasury by anyone
using the Erg algorithm.
2. With the ease of scaling, the energy generation capabilities would cause looses
by the largest tax provider in the county.
3. A decrees in local market sales due to the integrated mechanical agricultural methods

A concerted effort by the government agencies of the Chippewa County, has cost 6 years
lost to time, while keeping me from commercializing the designs associated with the erg algorithm.

Thank you for your considerations. Please call at any time to discuss.

Thomas P. O'Connor 248-974-8002
Tom@2AlphaOmega.com


In addition to the Email record noted above the following is a Sample Set of contacted Defendants and others
required to up hold their professional Candor requirements who were clearly aware of the collusion of
usurpation by the Chippewa County Treasure. Thus providing justification for inclusion into the complaint.

To: Rep. Lee Chatfield (District 107)
Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.
Please Help.
Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Thursday, June 20, 2019 2:55:19 PM (UTC-05:00) Eastern Time (US & Canada).

To: cfazzari@chippewacountymi.gov
Subject: Fw: Re: Immediate Stay from November 1, 2019 Auction
Sent: 11/1/2019 1:40 AM was read on 11/1/2019 8:41 AM.

To: Dempkowski, Angela (Treasury)
Subject: Re: Real Estate Tax Inquiry
Sent: Monday, August 12, 2019 4:18:07 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Monday, August 12, 2019 4:26:44 PM (UTC-05:00) Eastern Time (US & Canada).

To: Dershowitz, Alan
Subject: Re: Fw: Re: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one
such Victim. Please Help.
Sent: Tuesday, July 23, 2019 4:29:18 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Tuesday, July 23, 2019 5:57:14 PM (UTC-05:00) Eastern Time (US & Canada).

To: Pallas, John (AG)
Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.
Please Help.
Sent: Friday, June 28, 2019 3:40:49 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Monday, July 15, 2019 9:28:33 AM (UTC-05:00) Eastern Time (US & Canada).

To: Dershowitz, Alan
Subject: Fw: Re: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such
Victim. Please Help.
Sent: Wednesday, July 3, 2019 1:46:12 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Wednesday, July 3, 2019 1:54:13 PM (UTC-05:00) Eastern Time (US & Canada).

To: Jackson, Chuck
Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.
Please Help.
Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Monday, June 24, 2019 2:35:46 AM (UTC-05:00) Eastern Time (US & Canada).

To: Matt Jaworowski
Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.
Please Help.
Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Saturday, June 22, 2019 10:42:13 PM (UTC-05:00) Eastern Time (US & Canada)

To: Cole Martens
Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.
Please Help.
Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Friday, June 21, 2019 12:18:54 PM (UTC-05:00) Eastern Time (US & Canada).Your message

To: Moody, Laura (AG)
Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.
Please Help.
Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)
was read on Friday, June 21, 2019 9:02:02 AM (UTC-05:00) Eastern Time (US & Canada).

**To: Westaby, Robb**
**Subject: [EXT] Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such**
**Victim. Please Help.**
**Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Friday, June 21, 2019 5:40:46 AM (UTC-05:00) Eastern Time (US & Canada).**

**To: Blake Hansen**
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Friday, June 21, 2019 12:45:42 AM (UTC-05:00) Eastern Time (US & Canada).**

**To: Cunningham, Darren**
**Subject: [EXT] Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such**
**Victim. Please Help.**
**Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Friday, June 21, 2019 12:15:30 AM (UTC-05:00) Eastern Time (US & Canada).**

**To: Shesky, Ty**
**Subject: [EXT] Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such**
**Victim. Please Help.**
**Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 11:13:45 PM (UTC-05:00) Eastern Time (US & Canada).**

**To: Devon Mahieu**
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Friday, June 21, 2019 7:28:54 AM (UTC+05:00) Ekaterinburg**
**was read on Friday, June 21, 2019 7:50:38 AM (UTC+05:00) Ekaterinburg.**

**Your message**
**To: Wilkins, Bailey**
**Subject: [EXT] Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such**
**Victim. Please Help.**
**Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 10:45:12 PM (UTC-05:00) Eastern Time (US & Canada).**

**Your message**
**To: Dickman, Timothy**
**Subject: [EXT] Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such**
**Victim. Please Help.**
**Sent: Thursday, June 20, 2019 10:28:54 PM (UTC-05:00) Indiana (East)**
**was read on Thursday, June 20, 2019 10:42:31 PM (UTC-05:00) Indiana (East).**

**To: Levy, Daniel (MDCR)**
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such**
**Victim. Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 9:29:32 PM (UTC-05:00) Eastern Time (US & Canada).**

**To: Darwin, Henry**
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 5:37:53 PM (UTC-05:00) Eastern Time (US & Canada).**

**To: Debien, Kathryn (Treasury)**
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 4:43:17 PM (UTC-05:00) Eastern Time (US & Canada).**

**To: Arbulu, Agustin (MDCR)**
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 3:03:07 PM (UTC-05:00) Eastern Time (US & Canada).**

To: Guilfoyle, Jeffrey (TREASURY)
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 2:58:58 PM (UTC-05:00) Eastern Time (US & Canada).**
**Your message**

To: Eubanks, Rachael (TREASURY)
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 2:57:52 PM (UTC-05:00) Eastern Time (US & Canada).**

To: Knezek, David (AG)
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was deleted without being read on Thursday, June 20, 2019 2:55:29 PM (UTC-05:00) Eastern Time**
**(US & Canada).**

To: Bieda, Steven (TREASURY)
**Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim.**
**Please Help.**
**Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Thursday, June 20, 2019 2:55:22 PM (UTC-05:00) Eastern Time (US & Canada).**

To: Bill Horton
**Subject: Re: Predatory Foreclosure**
**Sent: Wednesday, April 24, 2019 7:09:53 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Wednesday, April 24, 2019 8:35:34 PM (UTC-05:00) Eastern Time (US & Canada).**

To: Christina M. Martin
**Subject: Re: Predatory Foreclosure**
**Sent: Wednesday, April 24, 2019 7:09:53 PM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Wednesday, April 24, 2019 7:15:31 PM (UTC-05:00) Eastern Time (US & Canada).**

To: Christina M. Martin
**Subject: Predatory Foreclosure**
**Sent: Wednesday, April 17, 2019 11:00:05 AM (UTC-05:00) Eastern Time (US & Canada)**
**was read on Wednesday, April 17, 2019 11:55:46 AM (UTC-05:00) Eastern Time (US & Canada).**

*Plaintiff alleges an unlawful taking of his property. Plaintiff asserts that each Defendant conspired to violate the Michigan General Property Tax Act, Mich. Comp. Laws § 211.1 et seq, to gain a windfall that will benefit the County. Plaintiff asserts that his property is worth in excess of $200,000, which is well above the property tax liability amount, and that the County intends to take all the proceeds from the tax sale.*

*Plaintiff alleges that through deceit and fraud, the County Treasurer's Office changed the tax notification address for lots 49 and 50 based upon an anonymous phone call from a mentally ill diagnosed individual. (ECF No. 1, PageID.7.) Plaintiff asserts that Title-Check, LLC failed to properly send notifications. (Id.) Plaintiff learned of the improper name change and telephoned the County Treasurer's Office on January 29. On that date, he was assured that he was not in jeopardy of losing his property and was told that the foreclosure proceeding was in the early stage. (Id.) Plaintiff alleges that this was an effort to hide the truth that the foreclosure proceeding was actually in the final stages. (Id.) Plaintiff argues that Treasurer Hank and Title-Check, LLC colluded by telling Plaintiff to pay the tax bill in April, knowing that the foreclosure proceeding was in the final stages and that Plaintiff had the means to pay the tax bill at that time. Plaintiff asserts that the auctioneer failed to provide him with notification of the auction. (Id.)*

**The Chippewa Treasure colluded with Title-Check, llc knowing conjoining lots 49 & 50 were in fact in the final stage of foreclosure, instructing the homeowner to simple pay in April even though they were capable of paying in full as notified during the January Call (E9a). This as through the evidence of the supplied receipts of payment E18 Once completed as instructed and then instructing Title-Check, llc / Auctioneer to not notify the homeowner at the corrected address of 66 Peninsula Dr, Leonard Michigan of the mandatory February show cause hearing. Disabling the homeowner without clairvoyance that there was even an issue. (E9b)**
**The prosecutors colluded with the treasure and judiciary to allow the February cause hearing to continue and subsequent tax foreclosure to be conducted knowing that the notification address at 8909 Gittins was fraudulently made and corrected through the 9:33 am, January 29th 9 minute call. (E10)**
**Witness to admitted mistake as noted in the affidavit by Mike Lebow esq. (E29)**

*The collusion continued in the Michigan courts with a "February cause hearing and subsequent tax foreclosure."*
*(Id. at PageID.7.) The Chippewa County Court entered a judgment of foreclosure on March 29, 2017, to*
*collect the deficiency, plus interest, penalties, and fees. (Id. at PageID.10.) Plaintiff alleges that the Court was*
*misled regarding his notification of the tax liability. Plaintiff asserts that the tax foreclosure sale was*
*successfully delayed by a stay order entered by the Michigan Supreme Court. (Id. at PageID.10.)*

**Rebut, the sale at the Oct 8 tax auction was voluntarily removed without an order of stay, however, because of the
continued judicial collusion was allowed to be placed on the November 1. surplus on
line sale. With near 5000 views. Because of the refusal of this court to allow the rightful stay to occur,
only after the following letter was sent out did the auctioneer and new treasure contact choose
to once again voluntarily stay the sale as shown.**

**Marty Spaulding, General Manager TITLE CHECK, LLC 622 West Kalamazoo Avenue, Kalamazoo MI 49007
V 269.226.2600 F 269.592.5900**

**Mr O'Connor. The subject line of your email says "Immediate Stay from November 1, 2019 auction".
However I do not see any order of the court attached. Please provide an order of the court. Otherwise we have no
legal authority to do anything other than sell this property as mandated by state law.
This sale is effectuated pursuant to a judgment and order of the court, and being conducted in
compliance with the applicable law.You have challenged it numerous times and lost.**

**Once again if the above underline statement is true: Otherwise we have no legal authority to do anything
other than sell this property as mandated by state law, which it is not, by their actions of removing it from the
eminent Nov. 1 auction, they have collaborated in breaking the law. Or if they understood the mistake
and a lie by not removing the property**

**(Article X § 2 STATE CONSTITUTION (EXCERPT) CONSTITUTION OF MICHIGAN OF 1963 §
2 Eminent domain; compensation.**

**It is well established under Michigan law that a plaintiff cannot challenge a foreclosure and sale after the
expiration of the 6 month redemption period, absent a clear showing of fraud or irregularity in the
foreclosure proceedings themselves. Parker v. Midwest Loan Servs., Inc.
Case No: 15-11708 (E.D. Mich. Mar. 30, 2016)**

**On Sun, Oct 27, 2019 at 12:58 PM tom@2alphaomega.com wrote: COMPLAINT CaseNo.:2:19-cv-218
"DEMAND FOR JURY TRIAL" Honorable Paul L. Maloney**

**Immediate Stay from November 1, 2019 Auction**

**To: COUNTY OF CHIPPEWA,  Marjorie Hank and staff, Lucas Middleton (P79493),
Mr. Marty Spaulding, Title-Check, llc et.al.**

**A civil action between these parties or other parties arising out of the transaction or occurrences
alleged in this complaint has been previously filed in the courts of Michigan, where it was given case
numbers LC NO: 17-14728-CH COA NO: 349188 MSC NO: 1600261 and assigned to listed judges as defendants.**

**Although the action is no longer pending and ruled at the state level. The Fourth Circuit
narrowed the reach of Rooker-Feldman doctrine in Davani v. Virginia Dep't of Transp., No. 05-1432
(4th Cir. January 17, 2006) in light of the Supreme Court precedent. Exxon Mobile Corp. V. Saudi
Basic Indus. Corp., 125 S. Ct. 1517(2005) ... Significantly altered this circuit's interpretation of the
Rooker-Feldman doctrine. The Court held that "[b]ecause Davani's suit does not challenge the state
court's decision, and it instead seeks redress for an injury allegedly caused by Appellees, the
Rooker-Feldman doctrine does not apply, and the district court's dismissal of Davani's complaint was in error."**

**1.     The Chippewa county treasure through it's subordinate employees and those listed as defendants
clearly conducted fraud through the highest level of our judiciary by the intentional use of deceit, a
trick and dishonest means to deprive the homeowner of his money, property and legal rights. Thus the
home owner must be able to open Monell litigation due to the common fraudulent acts which will be
set before a jury.**

**•     It is well established under Michigan law that a plaintiff cannot challenge a foreclosure and
sale after the expiration of the 6 month redemption period, absent a clear showing of fraud or
irregularity in the foreclosure proceedings themselves. Parker v. Midwest Loan Servs., Inc.
Case No: 15-11708 (E.D. Mich. Mar. 30, 2016)**

2.    In all as outlined and upheld by the Highest Supreme Court of This Nation, The current bar and judicial reviews currently being conducted reviewing real injuries caused by the previous courts, collusion, fraud, and errors in interpretation leading to indentured servitude, denial of life, and rights of liberty. The COUNTY OF CHIPPEWA, Marjorie Hank and staff, Lucas Middleton (P79493), and Mr. Marty Spaulding, Title-Check, llc et.al. Are respectfully requested under-color-of-state-law and the irregularity statue To immediately, stay the unlawful Tax Auction set to occur by November. 1, 2019 until all rights of the Plaintiff can be heard by this court or until exhausted by the nation's Supreme Court if needed.

In closing, with Timbs v. Indiana, 586 U.S. (2019), In February 2019, the Court unanimously ruled that the Eighth Amendment's prohibition of excessive fines is an incorporated protection applicable to the states under the Fourteenth Amendment and the upcoming Rafaeli, LLC v. Oakland Cnty., SC: 156849 (Mich. Apr. 26, 2019) case, If you feel you are unwilling to take a step back and stay the November 1, 2019 auction please contact me immediately, in order to adjust the damages and take further legal defenses. Thank you in advance for the cooperation.

Sincerely,
Thomas P. O'Connor, Tom@2AlohaOmega.com 248-974-8004

*However, Plaintiff claims that the Michigan Supreme Court allowed the corruption to continue without hearing his pro se presentation. (Id. at PageID.8.) Plaintiff asserts that he never received proper notice of the February show cause Hearing or the March 31 redemption deadline for his foreclosed property. (Id. At PageID.11.) Plaintiff claims that notices were sent to an improper address and that he did not receive actual notice of the foreclosure until April 8, after the redemption period had expired. (Id. at PageID.11.) Plaintiff's request to set aside the foreclosure was denied in the state courts and by each Michigan Supreme Court justice despite his action of personally reaching out to each Michigan Supreme Court justice in an attempt to point out the illegal actions. (Id.) Plaintiff believes that this proves collusion from the highest members of the judiciary.(Id.) Plaintiff claims that Defendants including "members of the bar and judiciary in the appellate with clear collusion attempt to gain a [greater than] $200,000.00 profit while decreasing the net value" of his remaining contiguous lots. (Id. at PageID.8.)*

Additionally, members of the bar and judiciary in the appellate with clear collusion attempt to gain a ~$200,000.00 profit while decreasing the net value of the remaining 5 contiguous lots by causing the center two to be subdivided, knowingly deceived the courts in a clear act of obstruction, misconduct and the rules of candor as outlined in rule 8.4 and detailed Through the detailed records currently submitted to the FBI, Judicial and Bar Grievance Commissions. (E11a-d) Due to size of files on electronic each ~250 pgs.

Reaching out to the Supreme Court in order to govern and correct the lower courts, clear collusion and multiple constitutional issues both in the state of Michigan and through supremacy rules at the federal level. The court through lack of diligence chose to allow the corruption to occur dismissing the evidence provided or not even allowing the Pro Se presentation.

LC NO:17-14728-CH COA NO: 349188 MSC NO: 160026 (E12) On line.

*Plaintiff brings claims under the Fifth Amendment for an unlawful taking without just compensation, under the Eighth Amendment for excessive fines, and under the Fourteenth Amendment for a violation of his due process rights. In addition, Plaintiff raises state law claims under the Michigan Constitution and for unjust enrichment.*

*Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any action brought in forma pauperis if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.*

Rebut In rebut and request for reconsideration:
(1) frivolous or malicious;
Frivolous Of minimal importance; legally worthless. A frivolous suit is one without any legal merit. In some cases, such an action might be brought in bad faith for the purpose of harassing the defendant. In such a case, the individual bringing the frivolous suit might be liable for damages for Malicious Prosecution. A frivolous appeal is one that is completely lacking merit, since no review able question has been raised therein.
a) Having clearly shown through submitted documentation such as E18 demonstrating plaintiff was up to date on the property.
b) Fully aware of the illegal usurpation of an entire life's savings after paying more than $67k in taxes that were overcharged E25,
c)All defendants fully aware of the ongoing fraud through the provided evidence continued support,
d) The judicial and Bar grievances currently under review.
e) Over $30K spent to-date in order to keep my property in legal fees.
f) The plaintiff was in fact not into the 3rd and final year of foreclosure but the first and that was only because of the misconduct of the State.
g) The receipts demonstrating that the county had illegally allowed a hostile actor to fraudulently change the address of notification of only the center 2 of 5 contiguous lots

h) Knowing of the identity theft as corrected on JANUARY 29TH AT 9:33 am E8 continued to send non essential mailings to the correct 66 Peninsula address as noted through 18 examples E4 and E35,

i) Through the due diligence of the homeowner kept the property from going into further delinquency.

j) Fully aware of the address change and corrected immediate through the phone conversation E8 the malicious act of the treasure, the treasure's office, and each of the defendants acted with knowledge to perpetuate the corruption.

k) Even though the property in reality was not at the stage of a 3rd year February show cause state of foreclosure as demonstrated by the government receipts in hand. The treasure, attorneys and judge allowed the illegal taking of the lots 49 & 50. Keeping the homeowner from his rightful land meant to provide the sustenance and land necessary for life.

For each of the stated a-k and additional justification if called upon, frivolous or malicious reasons for dismissing with prejudice must be reconsidered and reversed.

2) fails to state a claim on which relief may be granted; or Definition. Failure to state a claim upon which relief can be granted is a defense to a legal claim. It means that the claimant has failed to present sufficient facts which, if taken as true, would indicate that a violation of law had occurred or that the claimant was entitled to a legal remedy.

It is well-settled that, when assessing whether a complaint states a claim upon which relief may be granted, a court must "constru[e] the complaint liberally, accepting all factual inferences in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."
Miller v. N.Y. State Police 14-CV-393 (W.D.N.Y. Aug. 25, 2016)

It is well settled that a complaint may not be dismissed for failure to state a claim upon which relief may be granted unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. Paul v. Metropolitan School District of Lawrence Township, Ind. App., 455 N.E.2d 411, 412.
Hanover Logansport v. Robert C. Anderson 512 N.E.2d 465 (Ind. Ct. App. 1987) Hoosier Plastics v. Westfield Savings Loan Association, Ind. App., 433 N.E.2d 24, 27, trans.
Paul v. Metropolitan School District of Lawrence Township 455 N.E.2d 411 (Ind. Ct. App. 1983)

It is axiomatic that a complaint should not be dismissed for failure to state a claim upon which relief may be granted unless it appears to a certainty that plaintiff is not entitled to recover under any state of fact which may be proved to support his claim. Midway Enterprises, Inc. v. Petroleum Marketing 375 F. Supp. 1339 (D. Md. 1974)

It is well established that a motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. Ga. Power Co. v. Cazier A12A2440 (Ga. Ct. App. Mar. 29, 2013)

It is well settled that a complaint may not be dismissed for failure to state a claim upon which relief may be granted, unless it appears to a certainty on the face of the compliant that the complaining party is not entitled to any relief. See Fed.R.Civ.P. 12 (b); Ind. Rules of Procedure, Trial Rule 12(b); Bienz v. Bloom, 674 N.E.2d 998 (Ind.Ct.App. 1996), reh'g denied; Hanover Logansport, Inc. v. Robert C. Anderson, Inc., 512 N.E.2d 465 (Ind.Ct.App.1987).

Courts view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits.

It is axiomatic that each member of a plaintiff class must have suffered an actionable injury, which is a prerequisite of any tort claim. " Henry v. Dow Chemical Co. 772 N.W.2d 301 (Mich. 2009)

It is well established that " party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." Eldred v. Ziny 631 N.W.2d 748 (Mich. Ct. App. 2001)

It is well-established that violations of state law or procedure that do not infringe specific federal constitutional protections are not cognizable claims on habeas review.
Bacon v. Klee Case No. 2:13-cv-10016 (E.D. Mich. Oct. 22, 2015)

Each of the above was answered in brief and is readily to expand giving the constitutional right to. A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. '" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v.Gibson, 355 U.S. 41, 47 (1957)).

*While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."Twombly, 550 U.S. at 570. "A claim has facialplausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement, . . .it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).*

*In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009); Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996).*

*Plaintiff names a judge and several Justices of the Michigan Supreme Court as Defendants. Defendants include Chippewa Circuit Court Judge Lambros, and Michigan Supreme Court Chief Justice McCormack and Justices Markman, Zahra,Vivian, Bernstein, Clement, and Cavanagh. Plaintiff argues that each of the members of the judiciary are part of the conspiracy to wrongfully take his property to gain an improper financial windfall.*

*Generally, a judge is absolutely immune from a suit for monetary damages. Mireles v. Waco, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); Barrett v. Harrington, 130 F.3d 246, 254 (6th Cir. 1997); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. Mireles, 502 U.S. at 11; see Forrester v. White, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. Id. at 12.*

**"... the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void, and that courts, as well as other departments, are bound by that instrument." Marbury v. Madison, 1 Cranch 137 (1803). Justice Field in Bradley v. Fisher. (13 Wall) 353 (1871) stated: "...judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction."**

**"The doctrine of judicial immunity originated in early seventeenth-century England in the jurisprudence of Sir Edward Coke. In two decisions, Floyd & Barker and the Case of the Marshalsea, Lord Coke laid the foundation for the doctrine of judicial immunity." Floyd & Barker, 77 Eng. Rep. 1305 (1607; The Case of the Marshalsea, 77 Eng. Rep. 1027 (1612) were both cases right out of the Star Chamber.**

**Coke's reasoning for judicial immunity was presented in four public policy grounds:**
**1. Finality of judgment;**
**2. Maintenance of judicial independence;**
**3. Freedom from continual calumniations; and,**
**4. Respect and confidence in the judiciary.**

**The Marshalsea presents a case where Coke denied a judge immunity for presiding over a case in assumpsit. Assumpsit is a common-law action for recovery of damages for breach of contract. Coke then explained the operation of jurisdiction requirement for immunity:**

**"[W]hen a Court has (a) jurisdiction of the cause, and proceeds iversoordine or erroneously, there the party who sues, or the officer or minister of the Court who executes the precept or process of the Court, no action lies against them. But (b) when the Court has not jurisdiction of the cause, there the whole proceeding is [before a person who is not a judge], and actions will lie against them without any regard of the precept or process..." Although narrowing the availability of judicial immunity, especially in courts of limited jurisdiction, Coke suggested that there was a presumption of jurisdiction and that the judge must have been aware that jurisdiction was lacking. Thus, questions of personam, rem and res jurisdiction are always a proper issue before the court to obviate the defense that the court had no way to know they lacked jurisdiction."Stump v Sparkman Revisited" continues to show it was Chief Justice Kent (circa 1810) that was instrumental in establishing the"doctrine" of JI in America, in Yates v. Lansing, 5 Johns 282. Thereafter Justice incorporated the "doctrine" in two cases: Randall v. Brigham, 74 U.S. (7 Wall.) 523, and Bradley v. Fisher, 80 U.S. (13 Wall.) 335 (1871). Both Yates and Randall dealt with officers of the court.**

"The belief that Bradley narrowed the scope of the doctrine represents a serious misunderstanding of the decision. First, Bradley provides no authority for the belief that a judge of general jurisdiction may be liable for acts taken in absence of subject matter jurisdiction. The distinction between excess of jurisdiction and absence of jurisdiction in the opinion is simply explanatory. Because a court of general jurisdiction has jurisdiction over all causes of action, a judge of such a court will always be immune for his judicial acts, even if he exceeds his authority.   See Bradley, 80 U.S. at 351-52."

A Superior Court Judge is broadly vested with "general jurisdiction." Evidently, this means that even if a case involving a particular attorney is not assigned to him, he may reach out into the hallway, having his deputy use "excessive force" to haul the attorney into the courtroom for chastisement or even incarceration. Mireles v. Waco, 112 S.Ct. 286 at 288 (1991). Arguably, anything goes, in a Superior Court Judge's exercise of his "general jurisdiction", with the judge enjoying "absolute judicial immunity" against tort consequences provided he is not divested of all jurisdiction.

Administrative-capacity torts by a judge do not involve the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights," and therefore do not have the judicial immunity of judicial acts. See: Forrester v. White, 484 U.S. 219, 98 L.Ed.2d 555, 108 S.Ct. 538 (1988); Atkinson-Baker & Assoc. v. Kolts, 7 F.3d 1452 at 1454, (9th Cir. 1993).

A Judge as a State Actor is not vested with the sovereign immunity granted to the State itself . See: Rolfe v. State of Arizona, 578 F.Supp. 987 (D.C. Ariz.1983); Rutledge v. Arizona Bd. Of Regents, 660 F.2d 1345, (9th Cir, 1981) cert.Granted Kush v. Rutledge, 458 U.S. 1120, 102 S.Ct. 3508,73 L.Ed.2d 1382, affirmed 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d. 413, appeal after remand 859 F.2d 732, Ziegler v. Kirschner, 781 P.2d 54, 162 Ariz. 77 (Ariz. App., 1989).

It is said that absolute judicial immunity is favored as public policy, so that judges may fearlessly, and safe from retribution, adjudicate matters before them. True. But equally important, is the public expectation that judicial authority will only be wielded by those lawfully vested with such authority.

The history of Arizona's admission to the Union reveals at least one reason why historic public policy in Arizona would favor ARCP Rule 42(f)(1)'s complete and expeditious divestiture of jurisdiction, and its concurrent divestiture of absolute judicial immunity in the event a renegade judge persists in wielding the tools of his office after having been affirmatively stripped of. Arizona Rule 42(f)(1) states: them The difference between selectively disabling a judge in various aspects of Adjudication (such as during the appellate period) and the permanent extinguishment of his jurisdiction in a given case, has a logical relevance to a Judge's expectation of enjoying absolute judicial immunity in that case. In examining entitlement to immunity, the U.S. Supreme Court focused upon the nature of the act: is it an act ordinarily performed by a Judge?

Unfortunately, judges sometimes exceed their jurisdiction in a particular case. But an act done in complete absence of all jurisdiction cannot be a judicial act. Piper v. Pearson, id., 2 Gray 120. It is no more than the act of a private citizen, pretending to have judicial power which does not exist at all. In such circumstances, to grant absolute judicial immunity is contrary to the public policy expectation that there shall be a Rule of Law.

*Plaintiff's allegations fail to implicate either of the exceptions to judicial immunity. The state court judge and the Michigan Supreme Court Justices were acting judicially in making rulings on the foreclosure action and were acting within their jurisdiction in doing so.*

<mark>Rebut</mark>:The following further outlines the failure of each defendant to allow for Immunity:

First, a judge is not immune from liability for non-judicial actions:

Through the blatant, and continued action of each of the defendants acting outside their judicial actions by gaining individually and through the use of the profits from the predatory foreclosures that bypass the legal tax requirements of millage's in order to fund each of their perspective department.

The pompous arrogance of each defendant in their audacity of hiding behind the color of the law while they have through these predatory foreclosures have stolen the lives of so many Michiganders for which they have taken an oath to protect.

What is beyond belief is the case: Rafaeli, LLC v. Oakland Cnty., SC: 156849 (Mich. Apr. 26, 2019) currently in front of the same highest members of the state's court and the defendants listed. The supreme court of the nation (their bosses) have already unanimously made it clear through Supreme court rules on overreach, taken of properties and usage for own gain. Timbs v. Indiana 586 U.S. (2019).

Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction:

As demonstrated through the the evidence provided through the receipt E18 provided to the courts demonstrating the plaintiff's taxes had in fact been paid and the only late payment was caused by the illegal actions of the county: 1.   The allowing of a hostile address change of tax notifications without the permission of the owner on title.

2. The participation of each defendant in denying the plaintiff each of his legal do process rights
3. Allowed with full knowledge the corrected address kept from the Plaintiff, after the fraud was found out.
4. Acted outside their jurisdiction both in state laws of taking and international laws.
5. Each of the defendants acted outside their jurisdiction by not following the rules outlined in MCLS § 213.52 provides that if property is to be acquired by an agency through the exercise of its power of eminent domain, the agency should commence a condemnation action for that purpose
6. Since the homeowner had tax payments on record. Each of the defendants acted outside their jurisdiction by not following the rules outlined in MCLS § 213.55 provides that in addition to other allegations permitted or required by law, the complaint must include:

- A plan showing the property to be taken;
- A statement of the purpose for which the property is being taken;
- The name of each known owner of the property being taken;
- A statement setting forth the time within which the defendants may contest the right of the condemning agency to take the property;
- The amount that will be paid and to whom it will be paid if there is a default;
- The arrangements which have been made regarding the escrow of the good faith compensation; and
- A declaration of taking describing the property to be taken, whether fluid or mineral rights are included and the sum of money estimated by the agency to be just compensation for each parcel of property being acquired.

7. Acted outside their jurisdiction under international laws.
When the text of the UDHR was negotiated, other states in the Americas argued that the right to property should be limited to the protection of private property necessary for subsistence. Their suggestion was opposed, but was enshrined in the American Declaration of the Rights and Duties of Man, which was negotiated at the same time and adopted one year before the UDHR in 1948.[9] Alfredsson, Gudmundur; Eide, Asbjorn (1999). The Universal Declaration of Human Rights: a common standard of achievement. Martinus Nijhoff Publishers. p. 370. ISBN 978-90-411-1168-5.

Article 23 of the declaration states:
Every Person has the right to own such private property as meets the essential needs of decent living and helps to maintain the dignity of the individual and of the home.[10]
"American Declaration of the Rights and Duties of Man". Ninth International Conference of American States. pp. Article 23.

The definition of the right to property is heavily influenced by Western concepts of property rights, but because property rights vary considerably in different legal systems it has not been possible to establish international standards on property rights.[11] Alfredsson, Gudmundur; Eide, Asbjorn (1999). The Universal Declaration of Human Rights: a common standard of achievement. Martinus Nijhoff Publishers. pp. 359–360. ISBN 978-90-411-1168-5.

The regional human rights instruments of Europe, Africa and the Americas recognize the right to protection of property to varying degrees.[12] Alfredsson, Gudmundur; Eide, Asbjorn (1999).

The Universal Declaration of Human Rights:
a common standard of achievement. Martinus Nijhoff Publishers. p. 364. ISBN 978-90-411-1168-5.

The American Convention on Human Rights (ACHR) recognizes the right to protection of property, including the right to "just compensation". The ACHR also prohibits usury and other exploitation, which is unique amongst human rights instruments.[9] Article 21 of the ACHR states:

(1) Everyone has the right to the use and enjoyment of his property. The law may subordinate such use and enjoyment to the interest of society.
(2) No one shall be deprived of his property except upon payment of just compensation, for reasons of public utility or social interest, and in the cases and according to the forms established by law.
(3) Usury and any other form of exploitation of man by man shall be prohibited by law.[13]
"American Convention on Human Rights". Organization of American States. pp. Article 21

By each of the defendants, fully aware of the illegal usurpation of the lots without do process, allowing a foreclosure to take place even though the taxes had been payed in full, allowing of tax notifications to changed without the owners permission, and each of the listed prongs of immunity they clearly acted in a manner that allows for the civil damages and judicial disbarment.

When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction. State use of Little v. U.S. Fidelity & Guaranty Co., 217 Miss. 576, 64 So. 2d 697.

In Rankin v. Howard, 633 F.2d 844 (1980) the Ninth Circuit Court of Appeals reversed an Arizona District Court dismissal based upon absolute judicial immunity, finding that both necessary immunity prongs were absent; later, in Ashelman v. Pope, 793 F.2d 1072 (1986), the Ninth Circuit, en banc , criticized the "judicial nature" analysis it had published in Rankin as unnecessarily restrictive. But Rankin's ultimate result was not changed, because Judge Howard had been independently divested of absolute judicial immunity by his complete lack of jurisdiction.

"Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction."
Piper v. Pearson, 2 Gray 120, cited in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872)

"No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence." Ableman v. Booth, 21 Howard 506 (1859).
"The courts are not bound by an officer's interpretation of the law under which he presumes to act."
Hoffsomer v. Hayes, 92 Okla 32, 227 F 417.

CASE NOTE: "Federal tort law: judges cannot invoke judicial immunity for acts that violate litigants civil rights; Robert Craig Waters. Tort & Insurance Law Journal, Spr. 1986 21 n3, p509-516"

A Judge is not immune for tortious acts committed in a purely Administrative, non-judicial capacity. Forrester v. White, 484 U.S. at 227-229, 108 S.Ct. At 544-545; Stump v. Sparkman, 435 U.S. at 380, 98 S.Ct. At 1106. Mireles v. Waco, 112 S.Ct. 286 at 288 (1991).

The moment the defendant's actions to circumvent the funding of their staff in an administrative role, they extinguished their rights to immunity.

Some Defendants urge that any act "of a judicial nature" entitles the Judge to absolute judicial immunity. But in a jurisdictional vacuum, (that is, absence of all jurisdiction) the second prong necessary to absolute judicial immunity is missing. Stump v. Sparkman, id., 435 U.S. 349. A judge must be acting within his jurisdiction as to subject matter and person, to be entitled to immunity from civil action for his acts. Davis v. Burris, 51 Ariz. 220, 75 P.2d 689 (1938)

Generally, judges are immune from suit for judicial acts within or in excess of their jurisdiction even if those acts have been done maliciously or corruptly; the only exception being for acts done in the clear absence of all jurisdiction. Gregory v. Thompson, 500 F2d 59 (C.A. Ariz. 1974)

There is a general rule that a ministerial officer who acts wrongfully, although in good faith, is nevertheless liable in a civil action and cannot claim the immunity of the sovereign. Cooper v. O'Conner, 99 F.2d 133

*Moreover, injunctive relief is also not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall Not be granted" in an action against "a judicial officer for an act or omission taken in such officer's Judicial capacity . . . unless a declaratory decree was violated or Declaratory relief was unavailable." 42 U.S.C. § 1983; accord Savoie v. Martin, 673 F.3d 488, 496 (6th Cir. 2012).*

*Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred.Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999).*

Rebut: Although in indescribable sadness, when the highest value bestowed upon our judiciary; that of protecting their citizens:

But when a long Train of Abuses and Usurpation's, pursuing invariably the same Object, evinces a Design to reduce them under absolute Despotism, it is their Right, it is their Duty, to throw off such Government, and to provide new Guards for their future Security.

In such; The claim for injunctive relief, as shown through the preceding facts, sadly cannot be barred.

[I]t is well established that a litigant challenging the constitutionality of a statute and seeking injunctive relief is not necessarily required to follow the appellate procedure provided for in the statute challenged. Mich Canners v. Agricultural Bd. 245 N.W.2d 1 (Mich. 1976)

It is well established that we review a trial court's grant of relief from judgment for an abuse of discretion and that we review a trial court's findings of fact supporting its ruling for clear error.
People v. McSwain 676 N.W.2d 236 (Mich. Ct. App. 2004) Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999).

*Accordingly, Judge Lambros, Michigan Supreme Court Chief Justice McCormack, and Justices Markman, Zahra, Vivian, Bernstein, Clement, and Cavanagh are immune from suit.*

**Rebut:** **In such, through the examples listed both nationally, and internationally, The claim for injunctive relief sadly cannot be barred and each named must stand without immunity from the suit brought before this honorable court. Not simply for their judgment of foreclosure on a property, without mortgage, with taxes paid as instructed, but for the administrative collaboration to manipulate with purpose the law to apply through overreach additional funds to profit their departments, and municipalities. Even after the highest court in the nation through Timbs v. Indiana, 586 U.S. (2019), In February 2019, the Court unanimously ruled that the Eighth Amendment's prohibition of excessive fines as a incorporated protection applicable to the states under the Fourteenth Amendment and they continued to ignore it through the auctions and distribution of profits as outlined in the case Rafaeli, LLC v. Oakland Cnty., SC: 156849 (Mich. Apr. 26, 2019)**

**Summaries**

**Holding that "[t]he Excessive Fines Clause [of the Eight Amendment] is … incorporated by the Due Process Clause of the Fourteenth Amendment. Summary of this case from State v. Living Essentials, LLC.**

**Criticizing the Court's incorporation doctrine through a clause that addresses Procedures Summary of this case from Gamble v. United States**

**Considering the merits of a "fallback" argument Summary of this case from Clark v. Nagy**

**Noting that the Supreme Court has "tak[en] no position on the question whether a person's income and wealth are relevant considerations in judging the excessiveness of a fine" (citing Bajakajian, 524 U.S. at 340 n.15) Summary of this case from United States v. Bikundi**

**Tracing the history of the prohibition against excessive fines Summary of this case from Feenstra v. Sigler In Timbs, the petitioner had pleaded guilty in Indiana state court to dealing in a controlled substance and conspiracy to commit theft. Summary of this case from Santagata v. Diaz**

**In Timbs, the State of Indiana brought a civil forfeiture action against a criminal defendant to obtain a vehicle seized at the time of the defendant's arrest. Summary of this case from Sabri Props., LLC v. City of Minneapolis**

**Observing that the right guaranteed by the Excessive Fines Clause is deeply rooted Summary of this case from State v. Timbs**

**Observing the potential of fines to be used for retaliating against or chilling speech and for raising revenue apart from generally applicable taxes Summary of this case from State v. Timbs**

**In Timbs, the United States Supreme Court held that the Excessive Fines Clause of the Eighth Amendment is an incorporated protection applicable to the States through the Fourteenth Amendment. (Timbs, supra, U.S. [139 S.Ct. at pp. 686-687].) Summary of this case from People v. Fin. Cas. & Sur., Inc.**

**In Timbs, the petitioner, Timbs, was a party to the action, which involved the taking of his $42,000 Land Rover that the State of Indiana suspected was used to transport heroin. Summary of this case from People v. Fin. Cas. & Sur., Inc.**

*Plaintiff also sues Chippewa County Prosecutor Robert L. Stratton who allegedly was involved in the conspiracy. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. Kalina v. Fletcher, 522 U.S. 118, 127 (1997); Burns v. Reed, 500 U.S. 478, 486 (1991); Forrester v. White, 484 U.S. 219, 229 (1988); accord Koubriti v. Convertino, 593 F.3d 459, 467 (6th Cir. 2010); Lomaz v. Hennosy, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. Kalina, 522 U.S. at 130; Spurlock v. Thompson, 330 F.3d 791, 797 (6th Cir. 2003); Grant v. Hollenbach, 870 F.2d 1135, 1137 (6th Cir.1989). Plaintiff has failed to explain how Defendant Stratton was involved in the alleged conspiracy. Accordingly, Defendant Stratton is entitled to immunity.*

**Rebut:** **With similar action, complete knowledge, and in collusion as outlined in the immunity arguments for the supreme court defendants, The claim for injunctive relief sadly cannot be barred and each named must stand without immunity from the suit brought before this honorable court. Since Defendant Stratton acted in collusion to act as an accomplice to gain assets for the county in an administrative roll circumventing the legal tax methods for budgeting.**

*Plaintiff also names Representative Lee Chatfield as a conspirator but fails to assert any factual allegations in support of his claim. State legislatures are entitled to absolute immunity under § 1983 for their legislative activities. Bogan v. Scott- Harris, 523 U.S. 44, 49 (1998). Plaintiff has failed to explain how Defendant Chatfield is involved in the alleged conspiracy. Accordingly, Defendant Chatfield is entitled to absolute immunity.*

**Rebut.** As described in detail in the email directed and opened:
To: Rep. Lee Chatfield (District 107)
Subject: Fw: 80 out of 83 Michigan Counties have Predatory Foreclosures I am one such Victim. Please Help.
Sent: Thursday, June 20, 2019 2:53:36 PM (UTC-05:00) Eastern Time (US &Canada)
was read on Thursday, June 20, 2019 2:55:19 PM (UTC-05:00) Eastern Time (US &Canada).

Pointing out the illegal usurpation of lands within his jurisdiction for which his principalities were gaining outside
proper Tax methods, through his dismissal to act makes him a conspirator in the activity.
which the spoils are distributed. (RICO) The violation of the home owner first by the allowed changing
of their address, then by the courts provide the very reason the declaration of independence ordered
each citizen to the following, and the reason this Federal Court and Jury must review this case; (E40)
Thus also dismissing him from absolute immunity!

*It is a basic pleading essential that a plaintiff assert factual allegations against each named defendant. See Twombly,
550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a
defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against
government officials arising from alleged violations of constitutional rights must allege, with particularity, facts
that demonstrate what each defendant did to violate the asserted constitutional right." Lanman v. Hinson,
529 F.3d 673, 684 (6th Cir. 2008) (citing Terrance v. Northville Reg'l Psych. Hosp., 286 F.3d 834, 842 (6th Cir.2002)).
Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject
to dismissal, even under the liberal construction afforded to pro se complaints. See Frazier v. Michigan, 41
F. App'x 762, 764 (6th Cir.2002) (dismissing the plaintiff's claims where the complaint did not allege with any
degree of specificity which of the named defendants were personally involved in or responsible for each
alleged violation of rights); Griffin v. Montgomery, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000)
(requiring allegations of personal involvement against each defendant)); Rodriguez v. Jabe, No. 90-1010, 1990 WL
82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the
complaint is totally devoid of allegations as to them which would suggest their involvement in the events
leading to his injuries.") Plaintiff fails to mention Defendants Luce County Public Administrator Robinson
and Title-Check, LLC Attorney Lucas Middleton in the body of his complaint. His allegations fall far short of
the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing
that the pleader is entitled to relief"). Accordingly, Defendants Robinson and Middleton are entitled to
dismissal from this action.*

*As to the remaining Defendants, Plaintiff asserts state law and federal claims involving the foreclosure proceeding.
Plaintiff argues that provisions under the Michigan General Property Tax Act are unconstitutional. More
specifically, Plaintiff has asserted that he failed to receive notice of his property tax liability and of the foreclosure
action. In addition, Plaintiff alleges that the foreclosure proceeding is an unlawful taking because the value of the
foreclosed property exceeds the tax liability owed and Chippewa County will not refund the difference.*

*This Court must address concerns regarding subject matter jurisdiction. The Sixth Circuit in Wayside
Church v. Van Buren County, 847 F.3d 812 (6th Cir. 2017), held that where the State of Michigan
provided an adequate remedy to contest property tax disputes, the lower federal courts lack subject matter
jurisdiction to hear constitutional challenges such as a Fifth Amendment Takings Clause claim under the General
Property Tax Act. The Sixth Circuit, in reliance on Williamson Cty Reg'l Planning Comm'n v. Hamilton
Bank of Johnson City, 473 U.S. 172 (1985), remanded Wayside Church with instructions to dismiss
without prejudice for lack of subject matter jurisdiction because the issues presented were not ripe for review in federal
court.1*

*After the Sixth Circuit's decision and remand in Wayside Church, the Michigan Court of Appeals decided Rafaeli, LLC v.
Oakland County, No. 330696, 2017 WL 4803570 (Mich. App., Oct. 24, 2017) affirming a lower court
decision which held that the General Property Tax Act did not cause unconstitutional takings by authorizing
municipalities to retain property sale proceeds that exceed the amount of delinquent taxes owed. The Michigan
Court of Appeals relied on the decision in Bennis v. Michigan, 516 U.S. 442 (1996) and concluded that no
taking had occurred under the General Property Tax Act. The Court held that retaining proceeds in excess of the
taxes owned is analogous to the forfeiture of property under criminal forfeiture statutes.*

*The Michigan Supreme Court granted the Rafaeli plaintiffs application for leave to appeal their Takings Clause
claims under the United States and Michigan Constitutions, and for "retaining proceeds from the sale of tax
foreclosed property that exceeded the amount of the tax delinquency. . " 503 Mich. 909 (2018). That
matter is currently pending in the Michigan Supreme Court. As a result, this Court granted plaintiffs' motion
to reopen the proceedings in Wayside Church because the Michigan Court Appeals decision makes it clear that
there exists no "reasonable, certain and adequate remedy" to constitutional claims arising under the General
Property Tax Act procedures. Wayside Church v. Van Buren County, 1:14-cv-1274 (W.D. Mich., Mar. 26, 2019).
The Sixth Circuit did not have the benefit of the Michigan Court of Appeals decision when it remanded Wayside
Church with instructions to dismiss that case. Based upon the current state of the law in Michigan, this Court
concluded that "the Plaintiff's ought to have their constitutional claims decided on the merits" in this Court.
(Id. at PageID.648.) That is equally true in this case.*

*Accordingly, Defendants State of Michigan Representative Lee Chatfield, prosecuting attorney Robert L. Stratton, Judge P. Lambros, Michigan Supreme Court Chief Justice Bridget Mary McCormack, and Justices Stephen J. Markman, Brian K. Zahra, David F. Vivian, Richard Bernstein, Elizabeth T. Clement, and Megan K. Cavanagh are dismissed based upon absolute immunity.*

**Rebut:** **When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost.**

**As outlined in the previous and further in short: each named defendant failed the absolute immunity clause when they colluded in taking the property of the plaintiff knowing through the state records E18 that the property was not ripe for foreclosure. Each knowing and breaking or ignoring through candor rules outlined in the formal grievances under review, failed to act in accord to valid statues, such as the failure to notify even after the illegal change of address was found out and corrected. Ignoring the unanimous consensus of the Supreme Court in Timbs v. Indiana, 586 U.S. _(2019), In February 2019, allowing for the 2019 August 8th, and November 1st State Tax Auctions, and acting in ignorance of defiance of the international agreements state, manipulation of decision brought before them with respect to do process in order to circumvent the legal means of budgeting through millage's to bolster their own staffs, not acting with in their professional oaths to protect when mistakes or injustice is brought before them and others outlined. Thus any single one of the many actions outside their jurisdiction, or in opposition to valid statutes sadly, and with humility are enough to reverse your decision of absolute immunity.**

**In addition, Defendants Public Administrator James W. Robinson and Title-Check, LLC Attorney Lucas Middleton are dismissed for failure to state a claim upon which relief may be granted.**

**Rebut, for the same reasons as pointed out for the higher courts and claims upon which relief may be granted, reconsideration against dismissal of all listed defendants must be allowed to insure the sanctity of this court**

**In this case, Beyond the reasons listed, It is clear that when the homeowner payed his taxes on time per the supplied exhibit, (E18) and was directed by the treasure's office to pay the single year's delayed amount with penalties which were solely delayed only by the municipalities and defendants own negligence by allowing a hostile actor without any right to phone in the fraudulent address change. Each defendant fully aware of the correction made in January, with malice and intention choose to knowingly ignore the do process by not inviting the plaintiff to the February show cause hearing, laws that are meant to protect against this very action.**

**Each of the listed defendants this court has wrongfully dismissed with prejudice deprived the plaintiff of jurisdictional relief, thus judicial immunity is lost. Thus in addition to all of the previous, clearly allows for a state a claim on which relief may be granted. Thus through each of the aforementioned justification for the request of reversal is Humbly Requested.**

*The complaint should be served on Defendants Chippewa County, Chippewa County Treasurer Marjorie Hank, and Title-Check, LLC principle Marty Spaulding.*

*In Plaintiff's October 25, 2019 complaint, he requests that the Court stay the sale of the foreclosed property by November 1, 2019. Plaintiff requests immediate exparte relief. No Defendants have been served at this time. Plaintiff has failed to explain why he waited to file this complaint just before the date of the foreclosure sale when he was aware of the foreclosure and impending property sale for months if not years before he chose to file a federal complaint. Further, the foreclosure occurred in 2017 and Plaintiff alleges that he unsuccessfully appealed the foreclosure decision to the Michigan Supreme Court*

**Rebut: Without the blessing of the Supreme Court,and the voluntary removal from the August 3rd tax auction it was understood the rational presented was being corrected and as demonstrated, the plaintiff worked relentlessly to get one person to help. Not having any correspondence or warning of their position to attempt once again to present the property in the November 1st auction, and once again ignoring the clear orders of Supreme Court in Timbs v. Indiana, 586 U.S. (2019), It was only through clairvoyance and do diligence that we checked to see if the properties was removed from the Title-Check site.**

**After seeing the +5000 views the plaintiff Immediately reached out for legal assistance. Once found out, although we could not afford the cost of the $30,000.00 retainer from the attorney in the class action suit, we were informed that only if we chose to allow them to auction the property then join the class action suit to get the profits, he simple would not have the time. We then immediately began the federal process.**

*Federal Rule 65(a)(b)(1)(A) and (B): requires specific facts that clearly show immediate and irreparable injury and certification in writing the efforts taken to provide notice and the reasons it should not be required. Plaintiff has not satisfied those conditions.*

**Rebut: With every ounce of restraint in telling this court the obvious place Dante' has for each participant including this courts interpenetration to the very cornerstone of our declaration of independence and constitution, I will outline the specific facts that clearly show immediate and irreparable injury and certification in writing the efforts taken to provide notice.**

Immediate and irreparable injury- My lives savings and being forced to work for 10 additional years and then move to a third world nation since my country stole my life.

Efforts taken to provide notice. Although the court called out Rule 65.(a) Preliminary Injunction.
of the Injunctions and Restraining Orders, it failed to reference the subsections in such I have taken the liberty.
(1)  Notice. The court may issue a preliminary injunction only on notice to the adverse party. This was completed by the Plaintiff in the email to Title-Check, LLC principle Marty Spaulding, Marjorie Hank, and Lucas Middleton (P79493): were per Mr. Spaulding reasoning and in his own words broke the law when he removed the property from the November Auction, once again playing God with the plaintiff's life.

Marty Spaulding, General Manager TITLE CHECK, LLC
622 West Kalamazoo Avenue, Kalamazoo MI 49007 V 269.226.2600 F 269.592.5900

Mr O'Connor. The subject line of your email says "Immediate Stay from November 1, 2019 auction". However I do not see any order of the court attached.Please provide an order of the court. Otherwise we have no legal authority to do anything other than sell this property as mandated by state law.This sale is effectuated pursuant to a judgment and order of the court, and being conducted in compliance with the applicable law.You have challenged it numerous times and lost.

To: COUNTY OF CHIPPEWA,
Marjorie Hank and staff,
Lucas Middleton (P79493),
Mr. Marty Spaulding, Title-Check, llc et.al.

A civil action between these parties or other parties arising out of the transaction or occurrences alleged in this complaint has been previously filed in the courts of Michigan, where it was given case numbers LC NO: 17-14728-CH COA NO: 349188 MSC NO: 1600261 and assigned to listed judges as defendants.

Although the action is no longer pending and ruled at the state level. The Fourth Circuit narrowed the reach of Rooker-Feldman doctrine In Davani v. Virginia Dep't of Transp., No. 05-1432 (4th Cir. January 17, 2006) in light of the Supreme Court precedent. Exxon Mobile Corp. V. Saudi Basic Indus. Corp., 125 S. Ct. 1517(2005) ..Significantly altered this circuit's interpretation of the Rooker-Feldman doctrine. The Court held that "[b]ecause Davani's suit does not challenge the state court's decision, and it instead seeks redress for an injury allegedly caused by Appellees, the Rooker-Feldman doctrine does not apply, and the district court 's dismissal of Davani's complaint was in error."

1.    The Chippewa county treasure through it's subordinate employees and those listed as defendants clearly conducted fraud through the highest level of our judiciary by the intentional use of deceit, a trick and dishonest means to deprive the homeowner of his money, property and legal rights. Thus the home owner must be able to open Monell litigation due to the common fraudulent acts which will be set before a jury.

It is well established under Michigan law that a plaintiff cannot challenge a foreclosure and sale after the expiration of the 6 month redemption period, absent a clear showing of fraud or irregularity in the foreclosure proceedings themselves.
Parker v. Midwest Loan Servs., Inc. Case No:15-11708 (E.D. Mich. Mar. 30, 2016)

2.    In all as outlined and upheld by the Highest Supreme Court of This Nation, The current bar and judicial reviews currently being conducted reviewing real injuries caused by the previous courts, collusion, fraud, and errors in interpretation leading to indentured servitude, denial of life, and rights of liberty. THE COUNTY OF CHIPPEWA, Marjorie Hank and staff, Lucas Middleton (P79493), and Mr. Marty Spaulding, Title-Check, llc et.al. Are respectfully requested under-color-of-state-law and the irregularity statue To immediately, stay the unlawful Tax Auction set to occur by November. 1, 2019 until all rights of the Plaintiff can be heard by this court or until exhausted by the nation's Supreme Court if needed.

In closing, with Timbs v. Indiana, 586 U.S. _ (2019), In February 2019, the Court unanimously ruled that the Eighth Amendment's prohibition of excessive fines is an incorporated protection applicable to the states under the Fourteenth Amendment and the upcoming Rafaeli, LLC v. Oakland Cnty., SC: 156849 (Mich. Apr. 26, 2019) case, If you feel you are unwilling to take a step back and stay the November 1, 2019 auction please contact me immediately, in order to adjust the damages and take further legal defenses. Thank you in advance for the cooperation.
Sincerely,
Thomas P. O'Connor, Tom@2AlohaOmega.com
248-974-8004

Reading the rule further including the omitted Federal Rule 65(a)(2) The stay should be allowed.
(2)   Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

It is outside my intellectual capability to understand how by not allowing for the temporary stay as requested in 2:19-cv-218, what would be the purpose of "the court must preserve any party's right to a jury trial." if there is no property to me presented to a jury since this court denied the stay?

In the courts reference to denial because of Federal Rule 65(b)(1)(A) and (B)(b) Temporary Restraining Order.
(1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Reading of the email notice to the parties is self standing.

In the merits of the abbreviated evidence supplied in the initial motion including the required participation of all defendants regardless of the attempted protection of this court to dismiss members of the case who clearly were not protected under the most important need for immunity; once again each have been shown to not qualify under the absoluteness as described. To date, after reviewing ten's of thousands of cases when the final evidence of each defendant's participation currently being reviewed by the state's appropriate judicial grievance committees, with the e-file capabilities each can be joined through the e-filing system to allow for the required preservation of the right to present in a jury trial.

*The date that the property is to be sold is not a matter of record in this case.*

Rebut: Immediate Stay from November 1, 2019 Auction and subsequent voluntary removal was joined in the original complaint.

*Plaintiff failed to file a separate motion for injunctive relief or provide the Court with any factual or legal basis to stay the sale of the property.*

Rebut: As provided through the complaint title page and lines 87 & 88 both the demand for a jury trial as well as the Immediate Stay from November 1, 2019 Auction were joined to provide the expediency required.

CaseNo.: 2:19-cv-218 Honorable Paul L. Maloney
COMPLAINT "DEMAND FOR JURY TRIAL"
Immediate Stay from November 1, 2019 Auction / Preliminary Stay Before November 1, 2019

87. Do to the imminent sale listing, all further action on the property by the county or auctioneer shale be ordered to cease and desist.

JURY DEMAND
88. For all triable issues, a jury is hereby demanded. DATED: October 15, 2019.

With respect to the factual or legal basis to stay, the sale must be stayed if any single element listed in the formal complaint would compel this court to respect the Plaintiff's right.

This occurred through the following see attached line and exhibits:
IV. FACTUAL ALLEGATIONS Lines 22 to 40
DECLARATORY RELIEF ALLEGATIONS (MCR 2.605) Lines 41 to 50
LEGAL CLAIMS Amendments to the United States Constitution
Count 1: Violation of Fifth Amendment Takings Clause and 42 U.S.C. § 1983 Lines 51 to 60
Count 2: Violation of the Takings Clause of the Michigan Constitution of 1963, Article 10, § 2 Lines 61to 66
Count 3: Violation of Excessive Fines Clause Under Eighth Amendment; 42 U.S.C § 1983 Lines 67 to 75
Count 4: Due Process of Law Fourteenth Amendment; 42 U.S.C § 1983 Lines 76 to 100
Violation of the Excessive Fines Under Michigan Constitution of 1963, Article 1, § 16 Lines 100 to 105
Count 5: Unjust Enrichment Lines 106 to 114.

*Therefore, that request is DENIED. Dated: October 31, 2019      /s/ Paul L. Maloney*
*Paul L. Maloney United States District Judge*

Plaintiff has named as Defendants Treasurer Marjorie Hank's staff. The Court cannot serve a complaint on individuals identified as "staff." Further, Plaintiff has failed to explain how these unidentified individuals violated his rights.

The unidentified individuals were instructed to deceive the Plaintiff on the phone and perpetuated the falsehood that the properties in question were not ripe for foreclosure then even with a receipt of payment in hand. Further, each staff member were all in attendance at the first appeal and fully knowing of the discrepancies refused to step up instead contributed the the usurpation. Thus through the Monell doctrine are equally libel for the damages caused.

In Closing, Not in a million years would I have thought this could happen to my family. In no way did I just call out the listed defendants knowing their ability to attempt to hide behind Absolute Immunity.
Only by compelling each to provide the evidence Subpoenaed will the true years of bias and collusion be made visible. When realized through the attached emails, I reached out to everyone from the Governor and Attorney General's office to the Treasurer and so many more who took an oath to protect and failed measurable to simply correct what was an administrative typo, and allow the correction not be made for their personal gain or those subordinate to them.

This by definition is why we were ordered by our forefathers through the following:
But when a long Train of Abuses and Usurpation's, pursuing invariably the same Object, evinces a Design to reduce them under absolute Despotism, it is their Right, it is their Duty, to throw off such Government, and to provide new Guards for their future Security.

Being forced through their common strategy to litigate until bankruptcy, they have won and I must present Pro Se to save my life. For that I appreciate your leniency in form, however my proof is legally and scientifically sound and per our declaration of Independence, it is our responsibility to protect the thousands of victims this has happened to and for which our nations highest court in Timbs v. Indiana, 586 U.S. (2019), has ordered them to stop; which they refuse to obey.

"I declare that the statements included are true to the best of my information, knowledge and belief.
Respectfully Submitted

By Thomas P. O'Connor, Pro Se
66 Peninsla Dr., Leonard    MI 48367
Phone 248-974-8002 Email: Tom@2AlohaOmega.com
12-02-2019

**E18 On line receipt showing payments made to the county.**

[ Print this page ]



Government Payment Service
GovPayNet
7102 Lakeview Parkway West Drive
Indianapolis, IN 46268

24 Hour Customer Service #: 888-604-7888

# PROPERTY TAXES Payment Confirmation

| | | | |
|---|---|---|---|
| **PLC:** | **CHIPPEWA COUNTY TREASURER** | **DATE:** | 04/08/18 |
| **7780** | **319 COURT ST** | | |
| | **SAULT STE MARIE, MI 49783** | | |
| | **FOR: PROPERTY TAXES** | | |

**TRANSACTION INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **THOMAS OCONNOR** | | |
| Property ID #: | **17-001-049-00** | **TRANSACTION REFERENCE #:** | 22663983 |
| Property Address: | **28101 MAPLE LANE W. ECKERMAN MICHIGAN 49728** | | |
| Daytime Contact #: | **248-974-8002** | **TRANSACTION DATE/TIME:** | 04/08/2018 09:34:58 EDT |

**BILLING INFORMATION**

| | | | |
|---|---|---|---|
| NAME: | **THOMAS OCONNOR** | | |
| ADDRESS: | **6750 HAWAII KI DR** | **PAYMENT INFORMATION** | |
| CITY, STATE ZIP: | **HONOLULU, HI 96825** | **APPROVAL #:** | 686170 |
| PHONE #: | **248-974-8002** | **PAYMENT AMOUNT:** | $1,600.00 |
| CARD #: | **xxxx-xxxx-xxxx-0647** | **SERVICE FEE:** | $3.95 |
| **\* More than one card was used in this transaction.** | | **TOTAL AMOUNT:** | $1,603.95 |

## The service fee is not refundable.

---

**ATTENTION CARDHOLDER:**
If you have questions about the processing of your payment, please call GovPayNet at 888-604-7888.

---

**Cardholder Signature** _____        **Date** _____

**Thank you for using GovPayNet**

© 2007 Government Payment Service, Inc.                                            Form #: EUR

**E18 On line receipt showing payments made to the county.**

Print this page



Government Payment Service
GovPayNet
7102 Lakeview Parkway West Drive
Indianapolis, IN 46268

24 Hour Customer Service #: 888-604-7888

## PROPERTY TAXES Payment Confirmation

| | | | |
|---|---|---|---|
| **PLC:** | **CHIPPEWA COUNTY TREASURER** | **DATE:** | 04/08/18 |
| **7780** | **319 COURT ST** | | |
| | **SAULT STE MARIE, MI 49783** | | |
| | **FOR: PROPERTY TAXES** | | |

**TRANSACTION INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **THOMAS OCONNOR** | | |
| Property ID #: | **17-001-483-050-00** | **TRANSACTION REFERENCE #:** | 22663992 |
| Property Address: | **28115 W MAPLE LN ECKERMAN MI 49728** | | |
| Daytime Contact #: | **248-974-8002** | **TRANSACTION DATE/TIME:** | 04/08/2018 09:41:33 EDT |

**BILLING INFORMATION**

| | | | |
|---|---|---|---|
| NAME: | **THOMAS OCONNOR** | | |
| ADDRESS: | **6750 HAWAII KI DR** | **PAYMENT INFORMATION** | |
| CITY, STATE ZIP: | **HONOLULU, HI 96825** | **APPROVAL #:** | 048766 |
| PHONE #: | **248-974-8002** | **PAYMENT AMOUNT:** | $800.00 |
| CARD #: | **xxxx-xxxx-xxxx-0647** | **SERVICE FEE:** | $3.95 |
| **\* More than one card was used in this transaction.** | | **TOTAL AMOUNT:** | $803.95 |

## The service fee is not refundable.

**ATTENTION CARDHOLDER:**
If you have questions about the processing of your payment, please call GovPayNet at 888-604-7888.

**Cardholder Signature** _____   **Date** _____

**Thank you for using GovPayNet**

© 2007 Government Payment Service, Inc.

Form #: EUR

**E18 On line receipt showing payments made to the county.**

[Print this page]



24 Hour Customer Service #: 888-604-7888

## PROPERTY TAXES Payment Confirmation

| | | | |
|---|---|---|---|
| PLC: | CHIPPEWA COUNTY TREASURER | DATE: | 01/13/17 |
| 7780 | 319 COURT ST | | |
| | SAULT STE MARIE, MI 49783 | | |
| | FOR: PROPERTY TAXES | | |

### TRANSACTION INFORMATION

| | | | |
|---|---|---|---|
| Name: | THOMAS OCONNOR | | |
| Property ID #: | 001-483-049-00, 001-483-050-00 | TRANSACTION REFERENCE #: | 19521272 |
| Property Address: | 28101 W MAPLE LN ECKERMAN MI 49728, 28115 W MAPLE LN ECKERMAN MI 49728 | TRANSACTION DATE/TIME: | 01/13/2017 09:42:53 EST |
| Daytime Contact #: | 248-974-8002 | | |

### CARDHOLDER INFORMATION

| | | | |
|---|---|---|---|
| NAME: | THOMAS OCONNOR | | |
| ADDRESS: | 6750 HAWAII KAI DR. | PAYMENT INFORMATION | |
| CITY, STATE ZIP: | HONOLULU, HI 96825 | APPROVAL #: | 789468 |
| PHONE #: | 248-974-8002 | PAYMENT AMOUNT: | $4,000.00 |
| CARD #: | xxxx-xxxx-xxxx-0647 | SERVICE FEE: | $3.95 |
| | | TOTAL AMOUNT: | $4,003.95 |

## The service fee is not refundable.

---

**ATTENTION CARDHOLDER:**
If you have questions about the processing of your payment, please call GovPayNet at 888-604-7888.

---

### Thank you for using GovPayNet

© 2007 Government Payment Service, Inc.                                    Form #: EUR

**E8 Proof of Perjury through Phone records with Chippewa County not recorded**

**Sprint**

| | | | | Customer | Account Number | | Bill Period |
|---|---|---|---|---|---|---|---|
| | | | | Suzanne Abbot | 905862232 | | 2015 to 2018 |

**Call details (248) 974-8002 (Continued)**

## Voice Call Details

| | Date | Time | Phone Number | Call Destination | Rate Type | Minutes | Contact |
|---|---|---|---|---|---|---|---|
| **2015** | | | | | | | |
| 356 | 01/05 | 11:47 AM | 906-635-6320 | SLTSTMARIE,M | A | 3:00 | 91 district court |
| 724 | 02/17 | 12:49 PM | 906-635-6304 | SLTSTMARIE,MI | AU | 3:00 | Chippewa County Equalzation |
| 332 | 05/04 | 09:01 AM | 906-635-6304 | SLTSTMARIE,MI | AU | 3:00 | Chippewa County Equalization Stephine |
| 333 | 05/04 | 09:30 AM | 906-495-5756 | KINROSS,MI | AU | 2:00 | |
| 334 | 05/04 | 09:34 AM | 906-495-5756 | KINROSS,MI | AU | 1:00 | |
| 336 | 05/04 | 10:02 AM | 906-495-5756 | KINROSS,MI | AU | 1:00 | |
| 340 | 05/04 | 11:01 AM | 906-495-5756 | KINROSS,MI | AU | 2:00 | |
| 354 | 05/04 | 01:56 PM | 906-495-5756 | KINROSS,MI | AU | 1:00 | Bay Mills Twp Apprasor |
| 355 | 05/04 | 01:58 PM | 906-635-6304 | SLTSTMARIE,MI | AU | 1:00 | Chippewa County Equalization Stephine |
| 357 | 05/04 | 03:12 PM | 906-495-5756 | Incoming | AU | 18:00 | Bay Mills Twp Apprasor |
| 358 | 05/04 | 03:31 PM | 906-635-6304 | SLTSTMARIE,MI | AU | 1:00 | Chippewa County Equalization Stephine |
| 359 | 05/04 | 03:51 PM | 906-253-1100 | Incoming | AU | 22:00 | Chippewa County Treasurer |
| 465 | 05/08 | 12:02 PM | 906-635-6304 | SLTSTMARIE,MI | AU | 1:00 | Chippewa County Equalization Stephine |
| 466 | 05/08 | 12:04 PM | 906-495-5756 | KINROSS,MI | AU | 2:00 | Bay Mills Twp Apprasor |
| 475 | 05/08 | 01:38 PM | 906-253-1100 | Incoming | AU | 3:00 | Chippewa County Treasurer |
| 481 | 05/08 | 02:44 PM | 906-495-5756 | Incoming | CW/AU | 1:00 | |
| 482 | 05/08 | 02:46 PM | 906-495-5756 | KINROSS,MI | AU | 1:00 | |
| 483 | 05/08 | 02:46 PM | 906-495-5756 | KINROSS,MI | AU | 11:00 | |
| 490 | 05/08 | 04:16 PM | 906-495-5756 | KINROSS,MI | AU | 2:00 | Bay Mills Twp Apprasor |
| 220 | 06/04 | 02:29 PM | 906-635-1278 | Incoming | CW/AU | 2:00 | |
| 281 | 06/08 | 10:34 AM | 906-635-1278 | Incoming | AU | 3:00 | Chippewa Luce Mackinac Conservation District |
| 328 | 06/09 | 10:46 AM | 906-495-5756 | KINROSS,MI | AU | 6:00 | Bay Mills Twp Apprasor |
| 408 | 06/15 | 02:09 PM | 906-236-0380 | MARQUETTE,MI | AU | 1:00 | DEQ Christie Wilson |
| 428 | 06/16 | 01:16 PM | 906-635-6364 | SLTSTMARIE,MI | AU | 12:00 | Cheryl Jones, Victums advocate |
| 197 | 06/29 | 04:25 PM | 906-236-0380 | MARQUETTE,MI | AU | 4:00 | DEQ Christie Wilson |
| 199 | 06/29 | 04:31 PM | 906-635-1278 | SLTSTMARIE,MI | AU | 1:00 | Chippewa Luce Mackinac Conservation |
| 61 | 11/21 | 02:50 PM | 906-259-2131 | Incoming | NW/AU | 4:00 | Margaret E Olson - Sault Sainte Marie, |
| **2017** | | | | | | | |
| | 01/12 | 10:31am | 906-635-6308 | SLTSTMARIE,MI | AU | 10:00 | Chippewa County Treasurer |
| | 01/30 | 11:43am | 906-635-6308 | SLTSTMARIE,MI | AU | 04:00 | Chippewa County Treasurer |
| | 10/13 | 02:58pm | 906-635-6312 | SLTSTMARIE,MI | AU | 06:00 | Sharon H. Kennedy. Register of Deeds. |
| | 12/04 | 08:51am | 906-248-5356 | Incoming | AU | 04:00 | Kelly A Graham Bay Mills TWP Supervisor |
| **2018** | | | | | | | |
| | 01/29 | 09:33am | 906 635-6304 | SLTSTMARIE,MI | AU | 09:00 | Chippewa County Equalzation |
| | 04/09 | 07:53am | 906- 635-6300 | SLTSTMARIE,MI | 3W/AU | 10:00 | Chippewa County Clerk/Treasurer |
| | 06/21 | 09:07am | 906 635-6308 | SLTSTMARIE,MI | AU | 21:00 | Chippewa County Treasurer |
| | 06/22 | 02:23pm | 906-635-6308 | Incoming | AU | 02:00 | Chippewa County Treasurer |
| | 07/02 | 03:09pm | 906-248-2900 | Incoming | CW/AU | 03:00 | Jill R Holdsworth |

STATE OF MICHIGAN
IN THE 50th CIRCUIT COURT FOR THE COUNTY OF CHIPPEWA

| | |
|---|---|
| IN THE MATTER OF THE PETITION OF THE CHIPPEWA COUNTY TREASURER FOR FORECLOSURE OF CERTAIN PARCELS OF PROPERTY DUE TO UNPAID TAXES AND PRIOR YEARS' TAXES, INTEREST, PENALTIES, AND FEES. | CASE NO: 17-14728-CH

JUDGE: James P. Lambros |
|      Petitioner, | |
| vs | |
| THOMAS O'CONNOR, | |
|     Movant. | |

| | |
|---|---|
| Lucas Middleton (P79493)<br>Attorney for Petitioner<br>622 W Kalamazoo Ave<br>Kalamazoo, MI 49007<br>(269) 585-1271 | Charles J. Palmer (P39153)<br>Attorney for Movant<br>545 Ashmun St. Ste. 9<br>Sault St. Marie, MI 49783<br>(906) 632-1155 |

### AFFIDAVIT OF CARMEN FAZZARI

I, **CARMEN FAZZARI**, having been duly sworn, state as follows:

1.     I am currently an employee in the Chippewa County Treasurer's office and I have served in this capacity since 1996, serving as Chief Deputy Treasurer since 2009.

2.     My job responsibilities include regular interaction with delinquent taxpayers, both on the phone and in person.

3.     I have been trained on pertinent office policies related to taxpayer interaction and delinquent tax collection and I consistently follow such policies.

4.     On January 29, 2018 Thomas O'Connor Jr. called the treasurer's office and I spoke to him regarding delinquent 2015 real property taxes.

1

Page 32 of 36

5.      During this call, I informed Mr. O'Connor that there were delinquent 2015 real property taxes owing on the properties located at 28101 W Maple Ln and 28115 W Maple Ln (the "Subject Parcels").

6.      Furthermore, I explicitly informed Mr. O'Connor that if these taxes were not paid by March 31, 2018, he would lose his property.

7.      Mr. O'Connor indicated that he was involved in some kind of legal dispute with his sister and that his address had been changed.

8.      However, our records indicated that there had been no address changes regarding any of Mr. O'Connor's properties prior to this January 29, 2018 phone call.

9.      Mr. Connor indicated that he wished to change his address of record from 8909 Gittens, Commerce Township, MI 48382 to 66 Peninsula Dr, Leonard, MI 48367.

10.     In accordance with Mr. O'Connor's request, I changed our records to reflect the 66 Peninsula Drive address and forwarded this information to the county Equalization Department to implement the change in the pertinent tax records.

11.     Mr. O'Connor further indicated that he was expecting a "big check in the next couple weeks" and that he would pay the delinquent taxes at that time.

12.     It is our standard office policy to make a notation in our tax records to evidence change of address requests.

13.     In accordance with this policy, I made such a notation for both of the Subject Parcels outlining my conversation with Mr. O'Connor.

14.     The relevant notations for the Subject Parcels are attached here as Attachments A and B.

15.   I have personal knowledge of the facts stated in this Affidavit, and if called as a witness, I could testify competently to the facts set forth herein.

7/16/18
Dated

*Carmen M Fazzari*
Carmen Fazzari

Subscribed and sworn to before me on _7-16-18_ in Chippewa County, Michigan.

Notary public, State of MI, County of _Chippewa_   /s/ _Gigi Ferro_

My commission expires _12-17-2024_     _Gigi Ferro_
Print Notary Name

GIGI FERRO, NOTARY PUBLIC
CHIPPEWA COUNTY, STATE OF MICHIGAN
My Commission Expires December 17, 2024

3

## Attachment A

Parcel Num: 001-483-049-00

Find

6-16-08 Rcvd  payment in full from Mr. O'Connor but a note was written that a check was made current to Bay Mills Twsp Treas  but there was no record of it and it has not cleared. I left a message w/ Kathi regarding this.

9/24/12 vp-Thomas OConnor stopped in office to pay "any taxes due" 9/17/12...thought he was going to pay that day so wrote down the 2011 tax amts (quote for Sept). did direct him to the Twp to pay the 2012 taxes. Did not specifically tell him that wrote down was for Sept as I thought he was going to pay that day or the next

9/27/12 vp- Reprinted 2nd delinquent notices and sent them back out to him.

1-29-18 spoke with Tom (again) he said he is in a legal battle with his sister and his address keeps getting changed......changed our records to 55 Peninsula Drive, Leonard, MI 48367. Told him which of his properties have 2016 and /or 2015 taxes and that the 2015s must be paid my March 31, 2018 to avoid foreclosure. He is getting an attorney and going to Michigan Tax Tribunal, but says he is getting a big check in the next couple weeks and will pay all current AND delq taxes at that time

3-21-18 vp-call from Kerry Davidson (sister), she was wondering if the 2015 taxes were paid. I told her that he has until the end of the month to pay the taxes otherwise we will foreclose upon the property. She was just checking.

4-3-18 vp-FORECLOSED UPON FOR THE UnPAID 2015 TAXES FROM (THOMAS O'CONNOR)

4/9/18 rh DENIED CREDIT CARD PAYMENTS MADE BY MR OCONNOR. THIS PROPERTY HAD BEEN FORECLOSED ON AS OF APRIL 2ND.

5/10/18 rh Again recieved another Credit Card Payment from Mr. OcConnor and again I denied this Cedit Card Payment

6-11-18 reg-PER NOTICE OF JUDGMENT OF FORECLOSURE RECORDED 4/26/18 in LIBER 1279 PAGE 123 FROM THOMAS P OCONHOR JR TO CHIPPEWA COUNTY

MARJORIE HANK
Chippewa County Treasurer
319 Court Street
Sault Ste. Marie, MI 49783

Clear    Delete    Save    Ok    Cancel

Reference Maintenance

Attachment B

Exhibit

Parcel Num    001-483-050-00    Find

5-16-08 Rcvd. payment in full from Mr. O'Connor but a note was written that a check was made current to Bay Mills Twnp Treas. but there was no record of it and it has not cleared. I left a message w/ Kathi regarding this.

9/24/12 *eg-Thomas OConnor stopped in office to pay "any taxes due" 9/17/12...thought he was going to pay that day so wrote down the 2011 tax amts (quote for Sept)..did direct him to the Twp to pay the 2012 taxes. Did not write down was for Sept as I thought he was going to pay that day or the next

9/27/12 *eg.- Reprinted 2nd delinquent notices and sent them back out to him.

1-29-18 spoke with Tom (again) he said he is in a legal battle with his sister and the said his address keeps getting changed... changed our records to his 66 Peninsula Drive, Leonard, MI 48367. Told him which of his properties taxes owing and that the 2015s must be paid my March 31, 2018 to avoid foreclosure. He is getting an attorney and going to Michigan Tax Tribunal, but says he is getting a big check in the next couple weeks and will pay all at that time.

3-21-18 vg-call from Kerry Davidson (sister), she was wondering if the 2015 taxes were paid. I told her that he has until the end of the month to pay the taxes otherwise we will foreclose upon the property. She was just checking.

4-3-18 vg-FORECLOSED UPON FOR THE UNPAID 2015 TAXES FROM (THOMAS OCONNOR)

4/9/18 rh-DENIED CREDIT CARD PAYMENTS MADE BY MR OCONNOR. THIS PROPERTY HAD BEEN FORECLOSED ON AS OF APRIL 2ND.

5/10/18 rh Again recieved another Credit Card Payment from Mr. OcConnor and again I denied this Credit Card Payment.

5-11-18 vg-PER NOTICE OF JUDGMENT OF FORECLOSURE RECORDED 4/26/18 IN LIBER 1279 PAGE 124 FROM THOMAS P OCONNOR JR TO CHIPPEWA COUNTY.

MARJORIE HANK
Chippewa County Treasurer
319 Court Street
Sault Ste. Marie, MI 49783

Clear    Delete    Save    Ok

5. Furthermore, taxpayers sometimes wish to change their address of record for parcels of property that they own.

6. When an address change is requested, employees are to make a notation in our tax records to evidence such request.

7. The change of address information is then forwarded to the Chippewa County Equalization department to be changed.

8. Each of my employees have been trained on these policies and procedures and consistently implement and follow them.

9. I have personal knowledge of the facts stated in this Affidavit, and if called as a witness, I could testify competently to the facts set forth herein.

_7-11-18_
Dated

_Marjorie Hank_
Marjorie Hank

Subscribed and sworn to before me on __7/11/18__ in Chippewa County, Michigan.

Notary public, State of MI, County of _Chippewa_   /s/ _Cynthia A Morley_

My commission expires __1/1/2020__

_____
Print Notary

CYNTHIA A. MORLEY
NOTARY PUBLIC, STATE OF MICHIGAN
COUNTY OF CHIPPEWA
My Commission Expires January 1, 2020

